# NOTE

**November 21, 2006**          **Marlborough**                    **MA**
[Date]                        [City]                            [State]
                          **10 Belleview Avenue**
                     **Marlboro, MASSACHUSETTS 01752**

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$245,000.00**            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Gateway Funding Diversified Mortgage Services L.P.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         **6.7500%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     **1st**     day of each month beginning on       **January 01, 2007** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 01, 2036**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **300 Welsh Road, Building 5, Horsham, PENNSYLVANIA 19044**

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $**1,589.07**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    **Form 3200 1/01**

GREATLAND ■
ITEM 1646L1 (0011)                                   *(Page 1 of 3 pages)*                     To Order Call: 1-800-530-9393□Fax: 616-791-1131



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)                    _____ (Seal)
Richard J. Coffin        -Borrower                                          -Borrower

_____ XX(Seal)X                  _____ (Seal)
Barbara H. Rowe          XXXXXX                                             -Borrower
Witness                  RJC

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

*[Sign Original Only]*

Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By: _Laurie Meder_
    Laurie Meder, SVP

Pay to the order of:

Without Recourse
Countrywide Home Loans, Inc.

By: _Michela Solander_
    Michela Solander, SVP

Pay to the order of   **Countrywide Bank NA**
without recourse
Gateway Funding Diversified Mortgage
Services, L.P.
By its General Partner Gateway Funding, Inc.

_____
Sean McGinley
Note Coordinator

13 pages

After Recording Return To:
**Gateway Funding Diversified Mortgage Services L.P.**
**300 Welsh Road, Building 5**
**Horsham, PENNSYLVANIA 19044**



2006 00223608
Bk: 48551 Pg: 45  Doc: MTG
Page: 1 of 13   11/27/2006 10:25 AM

Property Location: 10 Belleview Avenue, Marlborough, MA 01752

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

MIN: 100070210740028954

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **November 21, 2006**, together with all Riders to this document.

**(B)** **"Borrower"** is **Richard J. Coffin**

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is **Gateway Funding Diversified Mortgage Services L.P.**
Lender is a **Limited Partnership** organized and existing under the laws of **PENNSYLVANIA**. Lender's address is
**300 Welsh Road, Building 5, Horsham, PENNSYLVANIA 19044**

**(E)** **"Note"** means the promissory note signed by Borrower and dated **November 21, 2006**. The Note states that Borrower owes Lender **Two Hundred Forty Five Thousand and no/100** Dollars (U.S. $ **245,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 01, 2036**.

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2680L1 (0011)—MERS

*(Page 1 of 12 pages)*

Form 3022 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Return To:
**Rowe Law Office**
**P.O. Box 617**
**Marlboro, MA 01752-0617**





EXHIBIT

B

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider

☐ Balloon Rider  ☐ Planned Unit Development Rider  ☒ Other(s) [specify] Exhibit "A"

☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2680L2 (0011)—MERS

*(Page 2 of 12 pages)*

Form 3022 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the       **County**      of      **Middlesex**     :
                  [Type of Recording Jurisdiction]                   [Name of Recording Jurisdiction]

which currently has the address of                **10 Belleview Avenue**
                                               [Street]

           **Marlboro**           , Massachusetts     **01752**      ("Property Address"):
         [City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.**    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          **Form 3022 1/01**
                                                                               GREATLAND ■
ITEM 2680L3 (0011)—**MERS**                      *(Page 3 of 12 pages)*               To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for

holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

MASSACHUSETTS—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 2680L5 (0011)—MERS

*(Page 5 of 12 pages)*

Form 3022 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.    Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)    Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)    Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.    Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

**MASSACHUSETTS**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
ITEM 2680L7 (0011)—MERS                *(Page 7 of 12 pages)*

**Form 3022 1/01**
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

---

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to,

**MASSACHUSETTS**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 2680L10 (0011)—**MERS**

*(Page 10 of 12 pages)*

**Form 3022 1/01**

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3022 1/01

GREATLAND ■
ITEM 2680L11 (0011)—MERS

*(Page 11 of 12 pages)*

To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
**Richard J. Coffin**                          -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                               -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                               -Borrower                                            -Borrower

Witness:                                            Witness:

_____
Barbara H. Rowe
Witness

Commonwealth of Massachusetts,          Middlesex County ss:

On this   **21st**   day of   **November 2006**                              , before me personally appeared
**Richard J. Coffin**

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

**BARBARA H. ROWE**
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETT'
MY COMMISSION EXPIRES
JULY 5, 2007

_____
Barbara H. Rowe                                        Notary Public

My commission expires:   July 05, 2007

# Exhibit A - Property Description

| | |
|---|---|
| Closing date: | **November 21, 2006** |
| Borrower(s): | **Richard J. Coffin** |
| Property Address: | **10 Belleview Avenue, Marlborough, Massachusetts 01752** |

The land with the buildings thereon situated on the westerly side of Belleview Avenue in Marlborough, Middlesex County, Massachusetts, being shown as Lot #2 on the plan entitled "Plan of Sub-Division of Land in Marlborough, Mass. owned by Joseph Bilancieri" recorded with Middlesex South District Registry of Deeds in Book 8273, Page 60, bounded and described as follows:

**EASTERLY**   by Belleview Avenue, 80 feet;

**SOUTHERLY**   by Lot #1 on said plan, 101.52 feet;

**WESTERLY**   by land of Marlborough Hospital on said plan, 80 feet; and

**NORTHERLY**   by Lot #3 on said plan, 101.14 feet.

CONTAINING 8,106 square feet of land, more or less, according to said plan.

For title see deed of Winston S. McLean and Meagan A. McLean to Richard J. Coffin dated July 17, 2003, recorded with Middlesex South District Registry of Deeds on July 18, 2003 in Book 40017, Page 155.

Attest. Middlesex S. Register

| RECORDING REQUESTED BY:<br>BAC Home Loans Servicing, LP<br>Attn: Home Retention Division<br>7105 Corporate Drive<br>(PTX-B-36)<br>Plano, TX 75024 | |

Doc ID #: 000147348904 MOD

------------------------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE------------------------------------

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 6th day of November, 2010, between RICHARD J COFFIN (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 21st day of November, 2006 in the amount of 245,000.00 , and (2) the Note bearing the same date as, and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 10 BELLEVIEW AVENUE, MARLBORO, MA 01752.

The real property described being set forth as follows:

## "SAME AS IN SAID SECURITY INSTRUMENT"

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  As of the 1st day of November, 2010, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $241,032.81, consisting of the amount(s) loaned to the Borrower by the Lender which may include, but are not limited to, any past due principal payments, interest, fees and/or costs capitalized to date. All costs and expenses incurred by Lender in connection with this Modification, such as recording fees, title examination, property valuation fees, and notary fees shall not be paid by the Borrower. All costs and expenses incurred by Lender in connection with servicing this Mortgage such as attorney's fees shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

2.  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance for the first 5 years of the modified term at the yearly rate of 4.000% from the 1st day of November, 2010. The Borrower promises to make monthly payments of principal and interest of U.S. $1,241.59 beginning on the 1st day of December, 2010.

    Beginning on the first day of the 6th year, interest will be charged at the yearly rate of 4.375% from the 1st day of November, 2015. The Borrower promises to make monthly payments of principal and interest of U.S. $1,284.32 beginning on the 1st day of December, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of December, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  The Borrower will make such payments at Payment Processing PO Box 650070 Dallas, TX 75265 or at such other place as the Lender may require.

6.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.





EXHIBIT

C

7.   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

Dated: 11-19-2010

RICHARD J COFRIN

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

8093 06/09

DO NOT WRITE BELOW THIS LINE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL BANK OF AMERICA HOME LOANS SERVICING, LP USE ONLY

BAC Home Loans Servicing, LP
7105 Corporate Drive
(PTX-B-35)
Plano, TX 75024

By:                              Dated:

_James J Smith_                  ___  FEB 0 3 2011___

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

8093 06/09

## United States Bankruptcy Court
## District of Massachusetts (Worcester)
## Bankruptcy Petition #: 11-42278

|  |  |
|---|---|
| | *Date filed:* 05/27/2011 |
| *Assigned to:* Judge Henry J. Boroff | *Date terminated:* 09/15/2011 |
| Chapter 7 | *Debtor discharged:* 09/09/2011 |
| Voluntary | *341 meeting:* 06/23/2011 |
| No asset | *Deadline for objecting to discharge:* 08/22/2011 |

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| **Debtor**<br>**Richard J. Coffin**<br>10 Belleview Avenue<br>Marlborough, MA 01752<br>SSN / ITIN: xxx-xx-8020<br>**dba Richard J. Coffin Trucking** | represented by **Philip M. Stone**<br>390 Main Street, Ste. 520<br>Worcester, MA 01608<br>(508) 755-7354<br>Fax : 508.752.3730 |

**Assistant U.S. Trustee**
**Richard King**
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608

**Trustee**
**Tr-John A. Burdick**
Post Office Box 101
Paxton, MA 01612
508-752-4633

| Filing Date | # | Docket Text |
|---|---|---|
| 05/27/2011 | [1](#)<br>(41 pgs) | Chapter 7 Voluntary Petition All Schedules and Statements, Matrix and Disclosure of Attorney Compensation in the Amount of $1500 Filing Fee in the Amount of $299 Filed by Richard J. Coffin. (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | [2](#) | Statement of Social Security Number(s) filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | [3](#)<br>(1 pg) | Declaration Re: Electronic Filing filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | [4](#)<br>(1 pg) | Certificate of Credit Counseling filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |

**EXHIBIT**

**D**

| 05/27/2011 | 5<br>(2 pgs) | Exhibit D - Individual Debtor's Statement of Compliance with Credit Counseling Requirement filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | 6<br>(7 pgs) | Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | 7<br>(1 pg) | Signature Page (Re: 1 Voluntary Petition (Chapter 7)) filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 05/27/2011) |
| 05/27/2011 | | Receipt of filing fee for Voluntary Petition (Chapter 7)(11-42278) [misc,volp7] ( 299.00). Receipt Number 10021306, amount $ 299.00. (U.S. Treasury) (Entered: 05/27/2011) |
| 05/27/2011 | | Meeting of Creditors scheduled on 06/23/2011 at 12:00 PM at Worcester U. S. Trustees Office,446 Main Street,1st Floor. Objections for Discharge due by 08/22/2011. (Stone, Philip) (Entered: 05/27/2011) |
| 05/30/2011 | 8<br>(1 pg) | Certificate of Appointment and Acceptance of Trustee and Fixing of Bond. (ADI) (Entered: 05/30/2011) |
| 05/31/2011 | 9<br>(3 pgs) | Court's Notice of 341 sent. (ADI) (Entered: 05/31/2011) |
| 06/02/2011 | 10<br>(1 pg) | Request for Notice by Dyck-O'Neal, Inc,. (Guinn, James) (Entered: 06/02/2011) |
| 06/02/2011 | 11<br>(4 pgs) | BNC Certificate of Mailing - Meeting of Creditors. RE: 9 Court's Notice of 341 sent Individual No Asset Service Date 06/02/2011. (Admin.) (Entered: 06/03/2011) |
| 06/09/2011 | 12<br>(1 pg) | Request for Notice by Recovery Management Systems Corporation (Singh, Ramesh) (Entered: 06/09/2011) |
| 06/24/2011 | | Meeting of Creditors Held and Examination of Debtor *on June 23, 2011.* (Burdick, Tr-John) (Entered: 06/24/2011) |
| 06/24/2011 | | Chapter 7 Trustee's Report of No Distribution: I, Tr-John A. Burdick, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned(without deducting any secured claims): $ 227999.00, |

| | | Assets Exempt: $ 10177.50, Claims Scheduled: $ 302568, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 302568.59. (Burdick, Tr-John) (Entered: 06/24/2011) |
| 07/18/2011 | 13 (1 pg) | Financial Management Course Certificate filed by Debtor Richard J. Coffin (Stone, Philip) (Entered: 07/18/2011) |
| 09/09/2011 | 14 (2 pgs) | Order Discharging Debtor Richard J. Coffin. (cleas, usbc) (Entered: 09/09/2011) |
| 09/11/2011 | 15 (3 pgs) | BNC Certificate of Mailing - Order of Discharge. RE: 14 Order Discharging Debtor Service Date 09/11/2011. (Admin.) (Entered: 09/12/2011) |
| 09/15/2011 | 16 (1 pg) | Order Discharging Trustee and Order to Close Case (Case Closed) . (yms, USBC) (Entered: 09/15/2011) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/24/2020 14:11:27 | | |
| **PACER Login:** | dgandl.com:2535591:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 11-42278 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

### District of Massachusetts
### Case No. <u>11–42278</u>
### Chapter 7

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Richard J. Coffin
dba Richard J. Coffin Trucking
10 Belleview Avenue
Marlborough, MA 01752

Social Security / Individual Taxpayer ID No.:
xxx–xx–8020

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: <u>9/9/11</u>

<u>Henry J. Boroff</u>
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.


EXHIBIT

E

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# Middlesex South Registry of Deeds
# Electronically Recorded Document

## This is the first page of this document - Do not remove

### Recording Information

| | |
|---|---|
| Document Number | : 39321 |
| Document Type | : ASM |
| Recorded Date | : February 28, 2012 |
| Recorded Time | : 08:50:50 AM |
| | |
| Recorded Book and Page | : 58566 / 486 |
| Number of Pages(including cover sheet) | : 2 |
| Receipt Number | : 1361707 |
| Recording Fee | : $75.00 |

**Middlesex South Registry of Deeds**
**Eugene C. Brune, Register**
**208 Cambridge Street**
**Cambridge, Massachusetts 02141**
**617/679-6310**


EXHIBIT
F

This space for Recorder's use

| | |
|---|---|
| DocID#   11714734890419520 | Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Diana De Avila**<br>**888-603-9011**<br>**450 E. Boundary St.**<br>**Chapin, SC 29036** |
| Property Address:<br>**10 Belleview Ave**<br>**Marlborough, MA 01752-1213**<br>Property Location:<br>**City of MARLBORO**<br>MA0-AM 16901034        2/24/2012 | When recorded mail to:<br>**CoreLogic**<br>**450 E. Boundary St.**<br>**Attn: Release Dept.**<br>**Chapin, SC 29036** |

MIN #:   100070210740028954        MERS Phone #:      888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170**
 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L.P.** |
| Original Borrower(s): | **RICHARD J. COFFIN** |
| Date of Mortgage: | **11/21/2006** |
| Original Loan Amount: | **$245,000.00** |
| Certificate of Title Number: | NA |

Recorded in **Middlesex/South District, MA** on: **11/27/2006, book 48551, page 45 and instrument number 2006 00223608**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:

~~Angela Jackson Assistant Secretary~~

State of **California**
County of **Ventura**
FEB 24 2012              before me, VAZRIKSARAFIANS*NOTARYPUBLIC*, Notary Public, personally appeared TRISHA JACKSON, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: ~~VAZRIK SARAFIANS~~
My Commission Expires: ~~NOV 06 2013~~                    (Seal)



VAZRIK SARAFIANS
Commission # 1867732
Notary Public - California
Los Angeles County
My Comm. Expires Nov 6, 2013

Caliber Home Loans, Inc.
PO Box 9081
Temecula, CA 92589-9081

Send Payments to:
Caliber Home Loans, Inc.
P.O. Box 650856
Dallas, TX 75265-0856

Send Correspondence to:
Caliber Home Loans, Inc.
P.O. Box 24610
Oklahoma City, OK 73124

9307 1100 1170 1034 9518 67

20200311-260

RICHARD J COFFIN
44 AHLGREN CIR
MARLBOROUGH, MA 01752-1061

W_MA_RTC_RMM

**EXHIBIT**

**G**



> ❖ *This is an important notice concerning your right to live in your home. Have it translated at once.*
> ❖ **Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.**
> ❖ **Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.**
> ❖ **C' est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.**
> ❖ 这是一则关於您居住权的重要通知, 请儘快安排翻译。

90-Day Right to Cure Your Mortgage Default

03/11/2020

Sent Via Certified Mail
9307 1100 1170 1034 9518 67

**RICHARD J COFFIN**
**44 AHLGREN CIR**
**MARLBOROUGH, MA 01752-1061**

RE: 10 BELLEVIEW AVE, , MARLBOROUGH, MA 01752-1213; loan ███████ with Caliber Home Loans, Inc.

To RICHARD J COFFIN:

We are contacting you because you did not make your monthly loan payment(s) due on 03/01/2012, 04/01/2012, 05/01/2012, 06/01/2012, 07/01/2012, 08/01/2012, 09/01/2012, 10/01/2012, 11/01/2012, 12/01/2012, 01/01/2013, 02/01/2013, 03/01/2013, 04/01/2013, 05/01/2013, 06/01/2013, 07/01/2013, 08/01/2013, 09/01/2013, 10/01/2013, 11/01/2013, 12/01/2013, 01/01/2014, 02/01/2014, 03/01/2014, 04/01/2014, 05/01/2014, 06/01/2014, 07/01/2014, 08/01/2014, 09/01/2014, 10/01/2014, 11/01/2014, 12/01/2014, 01/01/2015, 02/01/2015, 03/01/2015, 04/01/2015, 05/01/2015, 06/01/2015, 07/01/2015, 08/01/2015, 09/01/2015, 10/01/2015, 11/01/2015, 12/01/2015, 01/01/2016, 02/01/2016, 03/01/2016, 04/01/2016, 05/01/2016, 06/01/2016, 07/01/2016, 08/01/2016, 09/01/2016, 10/01/2016, 11/01/2016, 12/01/2016, 01/01/2017, 02/01/2017, 03/01/2017, 04/01/2017, 05/01/2017, 06/01/2017, 07/01/2017, 08/01/2017, 09/01/2017, 10/01/2017, 11/01/2017, 12/01/2017, 01/01/2018, 02/01/2018, 03/01/2018, 04/01/2018, 05/01/2018, 06/01/2018, 07/01/2018, 08/01/2018, 09/01/2018, 10/01/2018, 11/01/2018, 12/01/2018, 01/01/2019, 02/01/2019, 03/01/2019, 04/01/2019, 05/01/2019, 06/01/2019, 07/01/2019, 08/01/2019, 09/01/2019, 10/01/2019, 11/01/2019, 12/01/2019, 01/01/2020, 02/01/2020, and 03/01/2020 to Caliber Home Loans, Inc.. You must pay the past due amount of $161,021.63 on or before 06/09/2020, which is 90 days from the date of this notice. The past due amount on the date of this notice is specified below:

- $1,241.59 Principal & Interest due on 03/01/2012;
- $1,241.59 Principal & Interest due on 04/01/2012;



- $1,241.59 Principal & Interest due on 05/01/2012;
- $1,241.59 Principal & Interest due on 06/01/2012;
- $1,241.59 Principal & Interest due on 07/01/2012;
- $1,241.59 Principal & Interest due on 08/01/2012;
- $1,241.59 Principal & Interest due on 09/01/2012;
- $1,241.59 Principal & Interest due on 10/01/2012;
- $1,241.59 Principal & Interest due on 11/01/2012;
- $1,241.59 Principal & Interest due on 12/01/2012;
- $1,241.59 Principal & Interest due on 01/01/2013;
- $1,241.59 Principal & Interest due on 02/01/2013;
- $1,241.59 Principal & Interest due on 03/01/2013;
- $1,241.59 Principal & Interest due on 04/01/2013;
- $1,241.59 Principal & Interest due on 05/01/2013;
- $1,241.59 Principal & Interest due on 06/01/2013;
- $1,241.59 Principal & Interest due on 07/01/2013;
- $1,241.59 Principal & Interest due on 08/01/2013;
- $1,241.59 Principal & Interest due on 09/01/2013;
- $1,241.59 Principal & Interest due on 10/01/2013;
- $1,241.59 Principal & Interest due on 11/01/2013;
- $1,241.59 Principal & Interest due on 12/01/2013;
- $1,241.59 Principal & Interest due on 01/01/2014;
- $1,241.59 Principal & Interest due on 02/01/2014;
- $1,241.59 Principal & Interest due on 03/01/2014;
- $1,241.59 Principal & Interest due on 04/01/2014;
- $1,241.59 Principal & Interest due on 05/01/2014;
- $1,241.59 Principal & Interest due on 06/01/2014;
- $1,241.59 Principal & Interest due on 07/01/2014;
- $1,241.59 Principal & Interest due on 08/01/2014;
- $1,241.59 Principal & Interest due on 09/01/2014;
- $1,241.59 Principal & Interest due on 10/01/2014;
- $1,241.59 Principal & Interest due on 11/01/2014;

- $1,241.59 Principal & Interest due on 12/01/2014;
- $1,241.59 Principal & Interest due on 01/01/2015;
- $1,241.59 Principal & Interest due on 02/01/2015;
- $1,241.59 Principal & Interest due on 03/01/2015;
- $1,241.59 Principal & Interest due on 04/01/2015;
- $1,241.59 Principal & Interest due on 05/01/2015;
- $1,241.59 Principal & Interest due on 06/01/2015;
- $1,241.59 Principal & Interest due on 07/01/2015;
- $1,241.59 Principal & Interest due on 08/01/2015;
- $1,241.59 Principal & Interest due on 09/01/2015;
- $1,241.59 Principal & Interest due on 10/01/2015;
- $1,241.59 Principal & Interest due on 11/01/2015;
- $1,284.32 Principal & Interest due on 12/01/2015;
- $1,284.32 Principal & Interest due on 01/01/2016;
- $1,284.32 Principal & Interest due on 02/01/2016;
- $1,284.32 Principal & Interest due on 03/01/2016;
- $1,284.32 Principal & Interest due on 04/01/2016;
- $1,284.32 Principal & Interest due on 05/01/2016;
- $1,284.32 Principal & Interest due on 06/01/2016;
- $1,284.32 Principal & Interest due on 07/01/2016;
- $1,284.32 Principal & Interest due on 08/01/2016;
- $1,284.32 Principal & Interest due on 09/01/2016;
- $1,284.32 Principal & Interest due on 10/01/2016;
- $1,284.32 Principal & Interest due on 11/01/2016;
- $1,284.32 Principal & Interest due on 12/01/2016;
- $1,284.32 Principal & Interest due on 01/01/2017;
- $1,284.32 Principal & Interest due on 02/01/2017;
- $1,284.32 Principal & Interest due on 03/01/2017;
- $1,284.32 Principal & Interest due on 04/01/2017;
- $1,284.32 Principal & Interest due on 05/01/2017;
- $1,284.32 Principal & Interest due on 06/01/2017;



- $1,284.32 Principal & Interest due on 07/01/2017;
- $1,284.32 Principal & Interest due on 08/01/2017;
- $1,284.32 Principal & Interest due on 09/01/2017;
- $1,284.32 Principal & Interest due on 10/01/2017;
- $1,284.32 Principal & Interest due on 11/01/2017;
- $1,284.32 Principal & Interest due on 12/01/2017;
- $1,284.32 Principal & Interest due on 01/01/2018;
- $1,284.32 Principal & Interest due on 02/01/2018;
- $1,284.32 Principal & Interest due on 03/01/2018;
- $1,284.32 Principal & Interest due on 04/01/2018;
- $1,284.32 Principal & Interest due on 05/01/2018;
- $1,284.32 Principal & Interest due on 06/01/2018;
- $1,284.32 Principal & Interest due on 07/01/2018;
- $1,284.32 Principal & Interest due on 08/01/2018;
- $1,284.32 Principal & Interest due on 09/01/2018;
- $1,284.32 Principal & Interest due on 10/01/2018;
- $1,284.32 Principal & Interest due on 11/01/2018;
- $1,284.32 Principal & Interest due on 12/01/2018;
- $1,284.32 Principal & Interest due on 01/01/2019;
- $1,284.32 Principal & Interest due on 02/01/2019;
- $1,284.32 Principal & Interest due on 03/01/2019;
- $1,284.32 Principal & Interest due on 04/01/2019;
- $1,284.32 Principal & Interest due on 05/01/2019;
- $1,284.32 Principal & Interest due on 06/01/2019;
- $1,284.32 Principal & Interest due on 07/01/2019;
- $1,284.32 Principal & Interest due on 08/01/2019;
- $1,284.32 Principal & Interest due on 09/01/2019;
- $1,284.32 Principal & Interest due on 10/01/2019;
- $1,284.32 Principal & Interest due on 11/01/2019;
- $1,284.32 Principal & Interest due on 12/01/2019;
- $1,284.32 Principal & Interest due on 01/01/2020;

- $1,284.32 Principal & Interest due on 02/01/2020;
- $1,284.32 Principal & Interest due on 03/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2014;



- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2017;

- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2019;



- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2020;
- $37.24 Late Charges on Payments Due due on 03/01/2012;
- $37.24 Late Charges on Payments Due due on 04/01/2012;
- $37.24 Late Charges on Payments Due due on 05/01/2012;
- $37.24 Late Charges on Payments Due due on 06/01/2012;
- $37.24 Late Charges on Payments Due due on 07/01/2012;
- $37.24 Late Charges on Payments Due due on 08/01/2012;
- $37.24 Late Charges on Payments Due due on 09/01/2012;
- $37.24 Late Charges on Payments Due due on 10/01/2012;
- $37.24 Late Charges on Payments Due due on 11/01/2012;
- $37.24 Late Charges on Payments Due due on 12/01/2012;
- $37.24 Late Charges on Payments Due due on 01/01/2013;
- $37.24 Late Charges on Payments Due due on 02/01/2013;
- $37.24 Late Charges on Payments Due due on 03/01/2013;
- $37.24 Late Charges on Payments Due due on 04/01/2013;
- $37.24 Late Charges on Payments Due due on 05/01/2013;
- $37.24 Late Charges on Payments Due due on 06/01/2013;
- $37.24 Late Charges on Payments Due due on 07/01/2013;
- $37.24 Late Charges on Payments Due due on 08/01/2013;
- $37.24 Late Charges on Payments Due due on 09/01/2013;
- $37.24 Late Charges on Payments Due due on 10/01/2013;
- $37.24 Late Charges on Payments Due due on 11/01/2013;
- $37.24 Late Charges on Payments Due due on 12/01/2013;
- $37.24 Late Charges on Payments Due due on 01/01/2014;
- $37.24 Late Charges on Payments Due due on 02/01/2014;
- $37.24 Late Charges on Payments Due due on 03/01/2014;

- $37.24 Late Charges on Payments Due due on 04/01/2014;
- $37.24 Late Charges on Payments Due due on 05/01/2014;
- $37.24 Late Charges on Payments Due due on 06/01/2014;
- $37.24 Late Charges on Payments Due due on 07/01/2014;
- $37.24 Late Charges on Payments Due due on 08/01/2014;
- $37.24 Late Charges on Payments Due due on 09/01/2014;
- $37.24 Late Charges on Payments Due due on 10/01/2014;
- $37.24 Late Charges on Payments Due due on 11/01/2014;
- $37.24 Late Charges on Payments Due due on 12/01/2014;
- $37.24 Late Charges on Payments Due due on 01/01/2015;
- $37.24 Late Charges on Payments Due due on 02/01/2015;
- $37.24 Late Charges on Payments Due due on 03/01/2015;
- $21.60 PP - BOARDING due on 01/13/2016;
- $1,798.92 PP - OTHER MAINTENANCE COSTS due on 01/13/2016;
- $330.00 PP - LEGAL - RECEIVER FEES due on 05/13/2016;
- $16.02 FCL CERTIFIED MAIL COST due on 05/13/2016;
- $3,680.00 PP-LAWN <5000 SQ FT RECUT due on 06/01/2016;
- $336.48 FCL POSTING OF SALE COST due on 08/09/2016;
- $44.64 FCL FEES due on 08/09/2016;
- $1,657.50 FCL ATTORNEY FEES due on 08/09/2016;
- $299.97 PP - ELECTRIC BILLS due on 08/29/2018;
- $1,249.40 FCL MISC PROCEEDINGS due on 12/11/2018;
- $460.00 PP-DEBRIS REMOVE I/E HUD ALLOW due on 05/23/2019;
- $125.00 PP-LOCK CHANGE/REKEY due on 06/01/2019;
- $300.00 PP - SNOW REMOVAL due on 06/11/2019;
- $140.00 PP-LAWN CARE INITIAL due on 06/19/2019;
- $240.00 PP - WINTERIZE-DEWINTERIZE due on 06/19/2019;
- $315.00 PP - OTHER REPAIRS due on 09/19/2019;
- $108.00 PP-INTERIOR INSPECTION due on 11/08/2019;
- $800.00 PP-LAWN CARE RECUT due on 11/09/2019;
- $557.94 PP - OTHER MAINTENANCE COSTS due on 11/22/2019;



- $680.00 PP-LOCK CHANGE/REKEY due on 12/24/2019;

- $775.00 PP-WINTERIZE DRY HEATING SYS due on 12/26/2019;

- $1,080.00 PP-INSPECTION EXTERIOR due on 01/03/2020;

- $50.00 PP-HEALTH HAZARD REMOVAL/MOLD due on 02/24/2020;

- $300.00 PP-PUMP-PUMP BASEMENT due on 02/24/2020;

- Uncollected Late Charges of $0.00

- Unapplied Balance of ($0.00)

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:

>   Caliber Home Loans, Inc.
>   PO Box 650856
>   Dallas, TX 75265-0856

Please consider the following:

- You should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure.

- If you are a MassHousing borrower, you may also contact MassHousing (888-843-6432) to determine if you are eligible for additional assistance. There may be other homeownership assistance available through your lender or servicer.

- You may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you.

- After 06/09/2020, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place. Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to Caliber Home Loans, Inc..

**If you do not pay the total past due amount of $161,021.63 and any additional payments that may become due by 06/09/2020, you may be evicted from your home after a foreclosure sale. If Caliber Home Loans, Inc. forecloses on this property, it means the mortgagee or new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact Caliber Home Loans, Inc. at (800) 621-1437 or 13801 Wireless Way Oklahoma City, OK 73134.


Sincerely,

**SPOC DEPARTMENT**
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134
(800) 621-1437
(800) 735-2989 (TDD).

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

## Additional Disclosures

**Contractual Disclosures**:

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property.   You have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law.

**Right to Reinstate Following Acceleration:**

You have the right to reinstate the loan after acceleration any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in the Security Instrument; (b) such other period as Applicable Law might specify for the termination of your right to reinstate; or (c) entry of a judgment enforcing the Security Instrument.

**Right to Redeem:**

You may redeem the property by paying the total amount due prior to the foreclosure sale.

**Bankruptcy Notice:**

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

**Mini-Miranda/FDCPA:**

**Caliber Home Loans, Inc. is a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

**NOTICE OF IMPORTANT RIGHTS:**

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.

**Telephone Number and Office Hours**:

Our telephone number is (800) 621-1437; our office hours are: Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00

am to 7:00 pm, Sat 8:00 am to 4:00 pm

**Credit Reporting:**

We may report information about your account to credit bureaus and late or missed payments may be reflected on your credit report.  As required by law, you are hereby notified that a negative credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your obligations.

**Partial Payments:**

Caliber Home Loans, Inc. reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure.

**Servicemembers' Civil Relief Act:**

**Attention Servicemembers and Dependents:**  Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure.  SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances.  If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument now in default, please notify Caliber Home Loans, Inc. immediately. When contacting Caliber Home Loans, Inc. as to your military service, you must provide positive proof as to your military status.  Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer.  Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).  You can also contact SPOC DEPARTMENT toll-free at (800) 621-1437, or (800) 735-2989 (TDD) if you have questions about your rights under SCRA.

**Company Loss Mitigation Options:**

Caliber Home Loans, Inc. offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives to foreclosure. If you would like to learn more about these programs, you may contact our Loss Mitigation Department at (800) 621-1437, Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00 am to 7:00 pm, Sat 8:00 am to 4:00 pm.

> - *This is an important notice concerning your right to live in your home. Have it translated at once.*
> - **Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.**
> - **Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.**
> - **C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.**
> - 这是一则关於您居住权的重要通知，请儘快安排翻译

## RIGHT TO REQUEST A MODIFIED MORTGAGE LOAN

03/11/2020

Sent Via Certified Mail
9307 1100 1170 1034 9518 67

**RICHARD J COFFIN**
**44 AHLGREN CIR**
**MARLBOROUGH, MA 01752-1061**

RE: 10 BELLEVIEW AVE, , MARLBOROUGH, MA 01752-1213; loan ████████ with Caliber Home Loans, Inc.

To RICHARD J COFFIN:

We are contacting you because our records indicate that you are eligible to request a modification of your mortgage with Caliber Home Loans, Inc.. If you want to request a loan modification or other foreclosure alternative option, you must complete and return the enclosed Mortgage Modification Options form along with any supporting information no later than 04/10/2020. The Mortgage Modification Options form and any supporting documents must be returned by certified mail or similar service to Caliber Home Loans, Inc.. We will respond to your request within 30 days of its receipt.

Please be aware this notice of the Right to Request a Modified Mortgage Loan is different from the Right to Cure Your Mortgage Default notice that you may have already received. *The enclosed Mortgage Modification Options form provides you with four choices. These choices impact the options under the Right to Cure notice and should be carefully considered.* If you do not want to request a loan modification, you must still return the enclosed Mortgage Modification Options form. Please keep a copy of everything you send to us and keep proof of mailing the materials to us.

**If you do not return the enclosed Mortgage Modification Options form and a completed loan modification application by 04/10/2020 your right to cure your mortgage default will end on 06/09/2020.**

If you have questions, please contact Caliber Home Loans, Inc. at (800) 621-1437 or 13801 Wireless Way Oklahoma City, OK 73134. If you would like assistance from the Attorney General's Office, you may contact the HomeCorps hotline at 617-573-5333 to speak with a loan modification specialist

who can assist you. We suggest you mention this notice when you call.

Sincerely,


SPOC DEPARTMENT
SPOC Specialist
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134
(800) 621-1437
(800) 735-2989 (TDD).


Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

Enclosures:
- Mortgage Modification Options form
- Request for Mortgage Assistance Form or Caliber Home Loans, Inc.'s current loan modification application
- Required Documents For Loan Modification Application

# MORTGAGE MODIFICATION OPTIONS

You must return this form in the enclosed envelope by 04/10/2020

**RICHARD J COFFIN**
**44 AHLGREN CIR**
**MARLBOROUGH, MA 01752-1061**

RE: 10 BELLEVIEW AVE, , MARLBOROUGH, MA 01752-1213; loan ███████ with Caliber Home Loans, Inc.

To RICHARD J COFFIN:

You must check one of the following boxes to notify Caliber Home Loans, Inc. of how you would like to proceed.

❑      I would like to request a loan modification. I have attached a complete statement of my income and list of assets, total debts and obligations as requested by the creditor in the form(s) which accompanied the Right to Request a Modified Mortgage Loan Notice. I maintain my right to a 90 day period to cure my mortgage default.

❑      I would like to request a different foreclosure alternative such as a short sale or deed-in lieu of foreclosure. I maintain my right to a 90 day period to cure my mortgage default.

❑      I do not want to request a loan modification or any foreclosure alternative. I maintain my right to a 90 day period to cure my mortgage default.

❑      I want to waive my right to cure the default on my mortgage loan and proceed to foreclosure. I understand that by choosing this option I waive the remaining time, if any, of my right to cure period.


_____     _____
Borrower Name                                                          Date

_____
Borrower Telephone Number

**LOSS MITIGATION APPLICATION**

**COMPLETE ALL PAGES OF THIS FORM**
**See instructions page for numbered boxes at the end of this application.**

Loan Number: _____Servicer: _Caliber Home Loans, Inc._

| BORROWER {1} | CO-BORROWER {2} |
|---|---|
| Borrower's Name | Co-Borrower's Name |
| Social Security No. . . . . . . . . . . . . . . . Date of Birth | Social Security No. . . . . . . . . . . . . . . . Date of Birth |
| Home phone number with area code | Home phone number with area code |
| Cell number with area code | Cell number with area code |
| Work number with area code | Work number with area code |
| Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. | Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. |

**{3}** Mailing address:

Property address (if same as mailing address, check same)  ☐ Same

**{4} I want to:** ☐ Keep the Property    ☐ Vacate the property
**The property is my:** ☐ Primary Residence    ☐ Second Home    ☐ Investment
**The property is:** ☐ Owner Occupied    ☐ Renter Occupied    ☐ Vacant
**If the property is not currently vacant, do you have plans to vacate the property within 90 days?** ☐ Yes  ☐ No

| {5} | {6} |
|---|---|
| Is the property listed for sale? ☐ Yes  ☐ No<br>If No, proceed to section {6}<br><br>Have you received an offer on the property?  ☐ Yes  ☐ No<br><br>Date of offer:_____ Amount of offer: $ _____<br><br>Agent's Name? _____<br><br>Agent's Phone Number: _____<br><br>For Sale by Owner? ☐ Yes  ☐ No | Have you contacted a housing-counseling agency for help? ☐ Yes ☐ No<br>If yes, please complete the following:<br>Counselor's Name: _____<br><br>Agency Name: _____<br><br>Counselor's Phone Number: _____<br><br>Counselor's E-mail: _____ |
| **{7} Who pays the real estate tax bill on your property?**<br>☐ I do  ☐ Lender does  ☐ Paid by condo or HOA<br><br>Are the taxes current?  ☐ Yes    ☐ No<br><br>Condominium or HOA fees?  ☐ Yes    ☐ No<br><br>If yes:  $_____<br><br>Homeowners Association Name (HOA): | **{8} Who pays the hazard insurance premium for your property?**<br>☐ I do  ☐ Lender does  ☐ Paid by condo or HOA<br><br>Is the policy current?  ☐ Yes  ☐ No<br><br>Name of Insurance Co.: _____<br><br>Insurance Co. Tel #: _____ |

| | |
|---|---|
| _____<br>Paid to: _____ | |

**{9} Bankruptcy**
Have you filed for bankruptcy?          □ Yes    □ No       If yes: □ Chapter 7  □ Chapter 11  □ Chapter 12  □ Chapter 13
Filing Date: _____
Has your bankruptcy been discharged?    □ Yes    □ No       Bankruptcy case number: _____

**{10} Additional Liens/Mortgages or Judgments on this property:**

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**{11} HARDSHIP STATEMENT**
I am requesting review under your loss mitigation program.
I am having difficulty making my monthly payment because of financial difficulties created by  (check all that apply):

| | | | |
|---|---|---|---|
| □ | My household income has been reduced.  For example:  unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower. | □ | My monthly debt payments are excessive and I am overextended with my creditors.  Debt includes credit cards, home equity or other debt. |
| □ | My expenses have increased.  For example:  monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | □ | My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |

Hardship Detail (Please give a short description of your hardship situation):

Case 1:20-cv-40106-DJC   Document 1-1   Filed 08/24/20   Page 48 of 108

**COMPLETE ALL PAGES OF THIS FORM**
**See instructions page for numbered boxes at the end of this application.**

**{12}**
Are you self-employed?  . . . . . . □ Yes  □ No  **(please check one)**
Are you a teacher?  . . . . . . . . . . . □ Yes  □ No  **(please check one)**
If yes, do your paychecks consist of a  □ 10 month salary  OR  □ 12 month salary?  **(please check one)**

**{13}**
A Formal Repayment Plan requires a down payment of 50% of your unpaid past due debt. Do you have funds* that Caliber can consider in evaluating you for a Formal Repayment Plan?  **Yes  /  No  (please circle one)**

* Funds include checking or savings accounts, cash, and other liquid assets. Funds do not include retirement accounts.

If "Yes", what are the total funds?  $_____

| {14} Income[1] | | Assets | | Expenses | | |
|---|---|---|---|---|---|---|
| □ Monthly Income | $ | {25} Checking Account(s) | $ | {36} First Mortgage Payment | $ | |
| □ Bi-Weekly Income | $ | {26} Checking Account(s) | $ | {37} Second Mortgage Payment | $ | |
| □ Semi-Monthly Income | $ | {27} Savings/ Money Market | $ | {38} Rental Property Mortgage Payment | $ | |
| □ Weekly Income | $ | {28} CDs | $ | {39} Borrower Paid Homeowner's Insurance | $ | ( )Monthly ( )Quarterly ( )Annually |
| {15} Overtime/Bonus | $ | {29} Stocks/ Bonds | $ | {40} Borrower Paid Real Estate Taxes | $ | ( )Monthly ( )Quarterly ( )Annually |
| {16} Commission | $ | {30} Other Cash on Hand | $ | {41} HOA/Condo Fees | $ | ( )Monthly ( )Quarterly ( )Annually |
| {17} Social Security Income | $ | {31} Other Real Estate (estimated value) | $ | {42} Credit Cards / Installment Loan(s) (total minimum payment per month) | $ | |
| {18} Disability Income | $ | {32} Other: | $ | {43} Alimony, child support payments | $ | |
| {19} Rental Income | $ | {33} Other: | $ | {44} Net Rental Expenses | $ | |
| {20} Unemployment Income | $ | {34} Other: | $ | {45} Car Payments | $ | |
| {21} Child Support/Alimony/Separation Maintenance Income[2] | $ | {35} Total Assets: | $ | {46} Food / Groceries | $ | |
| {22} Non-Borrower Contribution to Household Income | $ | | | {47} Utilities (Water / Electricity / Gas / Trash) | $ | |
| {23} Public Assistance[3] | $ | | | {48} Automobile Gas/Insurance | $ | |
| {24} Total (Gross Income) | $ | | | {49} Other | $ | |
| | | | | {50} Total Expenses | $ | |

**ALL INCOME MUST BE DOCUMENTED**
[1]  Include combined monthly income and expenses from the borrower and co-borrower (if any).
[2]  You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.
[3]  You are not required to disclose Public Assistance income, unless you choose to have it considered by your servicer.

 W_MA_RTC_RMM   Rev. 11/2019
Page 19 of 22                                                              9307110011701034951867

**Instructions for Completing the Loss Mitigation Application**
**The numbers for each item below correspond to the same numbers in the form above.**

{1} The borrower section must include information on the person whose name is on the ''Note'' for the mortgage loan.
{2} The co-borrower is a second person on the Note for the mortgage loan. Do not fill out this section for someone who is not obligated on the Note for the mortgage loan.
{3} Please provide a mailing address and a residential "Property" address if different. The Property address should correspond to the mortgage for which you are submitting a Loss Mitigation Application.
{4} For this section you should choose one option for each question.
{5} If your Property is not listed for sale, you do not need to fill out the rest of Section 5. Only include offers for sale that you received in the past year.
{6} HUD-approved counselors are available free of charge and can be located on the HUD website at www.HUD.gov.
{7} If your real estate taxes are part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.
{8} If your hazard insurance premium is part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.
{9} The filing date indicates when you officially filed for bankruptcy. Only check the ''yes'' box for a discharged bankruptcy if you received a discharge from bankruptcy.
{10} Additional liens include second (or third) mortgages and home equity lines of credit.
{11} Please select as many hardships as apply to your situation and use the additional Hardship Detail section to explain your hardship.
{12} Check one answer for each question.
{13} Indicate amount of total funds to be evaluated for a Formal Repayment Plan.
{14} Indicate and check frequency. Include gross wages, which are what you receive before taxes. Use your most current pay stub to find this amount..
{15} This amount should be listed on a current pay stub.
{16} This amount can be listed on a current pay stub or on a separate pay stub from wages.
{17} Only include if you are collecting SSI (Social Security Income)
{18} Only include if you are collecting Disability income.
{19} Only include rental income if used as part of your overall income. Include current lease agreement or most recent tax return and most recent one month bank statement showing receipt of payment. .
{20} Report any unemployment income.
{21} If you receive child support, alimony, or separation maintenance income, you are not required to report it.
{22} Include income contributed to the Household from Non-Borrowers.
{23} Report the amount indicated on your benefits letter, including Public Assistance (food stamps and welfare). For Social Security, Disability, or Pension, a copy of your award letter must be provided or most recent one month bank statement showing receipt of payment. For Public Assistance, a copy of your award letter must be provided or most recent one month transaction activity. ....
{24} Add all amounts in income column (boxes 14-23) and report sum.
{25} – {27} Report amounts for all accounts, if applicable.
{28} "CDs" means certificates of deposit.
{29} – {30} Report amounts for all accounts, if applicable.
{31} Include estimated value for all other properties owned.
{32} – {34} Report any other assets other than the value of life insurance or retirement plans, such as 401K, pension funds, IRAs.
{35} Add all amounts in assets column (boxes 25-34) and report sum.
{36} This amount can be found on your statement for your first mortgage.
{37} If applicable, this amount can be found on the statement for your second mortgage or home equity lines of credit.
{38} If applicable, this amount can be found on the statement for your rental property.
{39} This refers only to homeowner's insurance and should be reported only if you pay this yourself.
{40} Only report these taxes if you pay them yourself.
{41} "HOA" means Homeowners Association.
{42} Add all credit cards and installment payments and report sum here.
{43} If you are responsible for paying child support or alimony, you must report the amount here.
{44} Report amount if your total rental income does not cover your total rental expenses.
{45} Include car payments only if you are the owner of the vehicle.
{46} Include all household food expenses.
{47} Include all expenses for utilities (water, gas, electricity, trash).
{48} Include all expenses for automobile gas and insurance.
{49} Include any other pertinent household expenses.
{50} Add all amounts in expense column (boxes 36-49) and report sum.
{51} Please be sure to read the entire Loss Mitigation Application Acknowledgement and Agreement before signing.

**LOSS MITIGATION APPLICATION**
**ACKNOWLEDGMENT AND AGREEMENT**

*In making this request for consideration under your loss mitigation program, I certify under penalty of perjury:*

That all of the information in this document is truthful and the event(s) identified on page one is/are the reason that I need to request a change to the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

I understand that the Servicer, Caliber Home Loans, Inc., or its agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate the law.

I understand that the Servicer will obtain a current credit report on all borrowers obligated on the Note.

I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any loss mitigation agreement and may pursue foreclosure on my home.

I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

I am willing to commit to housing counseling if it is determined that my financial hardship is related to excessive debt.

I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any loss mitigation agreement to any third party that needs this information to process this application, including but not limited to: any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate liens (if applicable) mortgage loan(s); any companies that perform support services in conjunction with my mortgage; any HUD-certified housing counselor; and government regulators.

By providing my phone number, I consent to being contacted via voice call, text message, or pre-recorded message by Caliber Home Loans, Inc. or its authorized third party through an automated dialing system regarding my account at any telephone number, including mobile telephone number, I have provided.

{51}
_____     _____
     Borrower Signature                                          Date


_____     _____
     Co-Borrower Signature                                      Date



Account Number: _____



## REQUIRED DOCUMENTS FOR LOSS MITIGATION ASSISTANCE

**The following documents are required for Caliber to review your application for loss mitigation:**[1]
- Completed and signed Loss Mitigation Application
- If you earn a salary or hourly wage: Most recent 30-days concurrent pay stubs.  These must display year-to-date payment information.
- If you are self-employed:
  - Signed three current months or year-to-date Profit and Loss Statement, OR
  - Most recent three months of bank statements and most recently filed state or federal tax return
- Documentation for additional sources of income:
  - Proof of other earned income: bonuses, commissions, tips, or overtime pay
  - If fixed income (Social Security, Disability, or Pension):
    - Award letter showing the amount and frequency of funds such as exhibits, disability policy or benefits statement from the provider, OR
    - Most recent one month bank statements showing receipt of payment
  - If Rental Income:
    - Current lease agreement, OR
    - Most recently filed federal tax return with all schedules and most recent one month bank statement showing receipt of payment
  - If Public Assistance:[2]
    - Award letter showing the amount and frequency of funds OR
    - Most recent one month transaction activity showing benefit deposits onto benefit card OR
    - A copy of front and back of benefit card
  - If Alimony or Child Support Income:[3]
    - Divorce decree or other written agreement filed with a court, OR
    - Alimony or child support order statement showing the amount and frequency of payments, and most recent one month bank statement showing receipt of payment
  - If submitting Contributor information:
    - Letter of Occupancy Verification
    - And Occupancy verification document; such as: utility bill, bank statement, voter registration or driver license

Based on circumstances, additional documentation may be required.  **DO NOT send original documents**.  Original documents cannot be returned.  You can download your application, upload documents online and create a checklist to track your progress by logging into your account at www.caliberhomeloans.com. Alternatively, you can return your completed application for review to the fax number, mailing address, or e-mail address below. Please indicate your loan number on each document of your application regardless if sent via web upload, fax, mail, or email.

**Loss Mitigation Application Return Address:**

Caliber Home Loans, Inc.
Attn: Loss Mitigation
13801 Wireless Way
Oklahoma City, OK 73134
www.caliberhomeloans.com
Fax number: 405-608-2011
Email: calibermods@caliberhomeloans.com

**ALL INCOME MUST BE DOCUMENTED**

[1] Include combined monthly income and expenses from the borrower and co-borrower (if any).

[2] You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.

[3] You are not required to disclose Public Assistance income, unless you choose to have it considered by your servicer.

Caliber Home Loans, Inc.
PO Box 9081
Temecula, CA 92589-9081

Send Payments to:
Caliber Home Loans, Inc.
P.O. Box 650856
Dallas, TX 75265-0856

Send Correspondence to:
Caliber Home Loans, Inc.
P.O. Box 24610
Oklahoma City, OK 73124

9307 1100 1170 1034 9518 74

20200311-260

RICHARD J COFFIN
10 BELLEVIEW AVE
MARLBOROUGH, MA 01752-1213

W_MA_RTC_RMM



CALIBER
HOME LOANS

---

> ❖ *This is an important notice concerning your right to live in your home. Have it translated at once.*
> ❖ **Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.**
> ❖ **Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.**
> ❖ **C' est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.**
> ❖ 这是一则关於您居住权的重要通知, 请儘快安排翻译。

90-Day Right to Cure Your Mortgage Default

03/11/2020

Sent Via Certified Mail
9307 1100 1170 1034 9518 74

**RICHARD J COFFIN**
**10 BELLEVIEW AVE**
**MARLBOROUGH, MA 01752-1213**

RE: 10 BELLEVIEW AVE, , MARLBOROUGH, MA 01752-1213; loan ▮▮▮▮▮▮▮ with Caliber Home Loans, Inc.

To RICHARD J COFFIN:

We are contacting you because you did not make your monthly loan payment(s) due on 03/01/2012, 04/01/2012, 05/01/2012, 06/01/2012, 07/01/2012, 08/01/2012, 09/01/2012, 10/01/2012, 11/01/2012, 12/01/2012, 01/01/2013, 02/01/2013, 03/01/2013, 04/01/2013, 05/01/2013, 06/01/2013, 07/01/2013, 08/01/2013, 09/01/2013, 10/01/2013, 11/01/2013, 12/01/2013, 01/01/2014, 02/01/2014, 03/01/2014, 04/01/2014, 05/01/2014, 06/01/2014, 07/01/2014, 08/01/2014, 09/01/2014, 10/01/2014, 11/01/2014, 12/01/2014, 01/01/2015, 02/01/2015, 03/01/2015, 04/01/2015, 05/01/2015, 06/01/2015, 07/01/2015, 08/01/2015, 09/01/2015, 10/01/2015, 11/01/2015, 12/01/2015, 01/01/2016, 02/01/2016, 03/01/2016, 04/01/2016, 05/01/2016, 06/01/2016, 07/01/2016, 08/01/2016, 09/01/2016, 10/01/2016, 11/01/2016, 12/01/2016, 01/01/2017, 02/01/2017, 03/01/2017, 04/01/2017, 05/01/2017, 06/01/2017, 07/01/2017, 08/01/2017, 09/01/2017, 10/01/2017, 11/01/2017, 12/01/2017, 01/01/2018, 02/01/2018, 03/01/2018, 04/01/2018, 05/01/2018, 06/01/2018, 07/01/2018, 08/01/2018, 09/01/2018, 10/01/2018, 11/01/2018, 12/01/2018, 01/01/2019, 02/01/2019, 03/01/2019, 04/01/2019, 05/01/2019, 06/01/2019, 07/01/2019, 08/01/2019, 09/01/2019, 10/01/2019, 11/01/2019, 12/01/2019, 01/01/2020, 02/01/2020, and 03/01/2020 to Caliber Home Loans, Inc.. You must pay the past due amount of $161,021.63 on or before 06/09/2020, which is 90 days from the date of this notice. The past due amount on the date of this notice is specified below:

- $1,241.59 Principal & Interest due on 03/01/2012;
- $1,241.59 Principal & Interest due on 04/01/2012;



- $1,241.59 Principal & Interest due on 05/01/2012;
- $1,241.59 Principal & Interest due on 06/01/2012;
- $1,241.59 Principal & Interest due on 07/01/2012;
- $1,241.59 Principal & Interest due on 08/01/2012;
- $1,241.59 Principal & Interest due on 09/01/2012;
- $1,241.59 Principal & Interest due on 10/01/2012;
- $1,241.59 Principal & Interest due on 11/01/2012;
- $1,241.59 Principal & Interest due on 12/01/2012;
- $1,241.59 Principal & Interest due on 01/01/2013;
- $1,241.59 Principal & Interest due on 02/01/2013;
- $1,241.59 Principal & Interest due on 03/01/2013;
- $1,241.59 Principal & Interest due on 04/01/2013;
- $1,241.59 Principal & Interest due on 05/01/2013;
- $1,241.59 Principal & Interest due on 06/01/2013;
- $1,241.59 Principal & Interest due on 07/01/2013;
- $1,241.59 Principal & Interest due on 08/01/2013;
- $1,241.59 Principal & Interest due on 09/01/2013;
- $1,241.59 Principal & Interest due on 10/01/2013;
- $1,241.59 Principal & Interest due on 11/01/2013;
- $1,241.59 Principal & Interest due on 12/01/2013;
- $1,241.59 Principal & Interest due on 01/01/2014;
- $1,241.59 Principal & Interest due on 02/01/2014;
- $1,241.59 Principal & Interest due on 03/01/2014;
- $1,241.59 Principal & Interest due on 04/01/2014;
- $1,241.59 Principal & Interest due on 05/01/2014;
- $1,241.59 Principal & Interest due on 06/01/2014;
- $1,241.59 Principal & Interest due on 07/01/2014;
- $1,241.59 Principal & Interest due on 08/01/2014;
- $1,241.59 Principal & Interest due on 09/01/2014;
- $1,241.59 Principal & Interest due on 10/01/2014;
- $1,241.59 Principal & Interest due on 11/01/2014;

- $1,241.59 Principal & Interest due on 12/01/2014;
- $1,241.59 Principal & Interest due on 01/01/2015;
- $1,241.59 Principal & Interest due on 02/01/2015;
- $1,241.59 Principal & Interest due on 03/01/2015;
- $1,241.59 Principal & Interest due on 04/01/2015;
- $1,241.59 Principal & Interest due on 05/01/2015;
- $1,241.59 Principal & Interest due on 06/01/2015;
- $1,241.59 Principal & Interest due on 07/01/2015;
- $1,241.59 Principal & Interest due on 08/01/2015;
- $1,241.59 Principal & Interest due on 09/01/2015;
- $1,241.59 Principal & Interest due on 10/01/2015;
- $1,241.59 Principal & Interest due on 11/01/2015;
- $1,284.32 Principal & Interest due on 12/01/2015;
- $1,284.32 Principal & Interest due on 01/01/2016;
- $1,284.32 Principal & Interest due on 02/01/2016;
- $1,284.32 Principal & Interest due on 03/01/2016;
- $1,284.32 Principal & Interest due on 04/01/2016;
- $1,284.32 Principal & Interest due on 05/01/2016;
- $1,284.32 Principal & Interest due on 06/01/2016;
- $1,284.32 Principal & Interest due on 07/01/2016;
- $1,284.32 Principal & Interest due on 08/01/2016;
- $1,284.32 Principal & Interest due on 09/01/2016;
- $1,284.32 Principal & Interest due on 10/01/2016;
- $1,284.32 Principal & Interest due on 11/01/2016;
- $1,284.32 Principal & Interest due on 12/01/2016;
- $1,284.32 Principal & Interest due on 01/01/2017;
- $1,284.32 Principal & Interest due on 02/01/2017;
- $1,284.32 Principal & Interest due on 03/01/2017;
- $1,284.32 Principal & Interest due on 04/01/2017;
- $1,284.32 Principal & Interest due on 05/01/2017;
- $1,284.32 Principal & Interest due on 06/01/2017;



- $1,284.32 Principal & Interest due on 07/01/2017;
- $1,284.32 Principal & Interest due on 08/01/2017;
- $1,284.32 Principal & Interest due on 09/01/2017;
- $1,284.32 Principal & Interest due on 10/01/2017;
- $1,284.32 Principal & Interest due on 11/01/2017;
- $1,284.32 Principal & Interest due on 12/01/2017;
- $1,284.32 Principal & Interest due on 01/01/2018;
- $1,284.32 Principal & Interest due on 02/01/2018;
- $1,284.32 Principal & Interest due on 03/01/2018;
- $1,284.32 Principal & Interest due on 04/01/2018;
- $1,284.32 Principal & Interest due on 05/01/2018;
- $1,284.32 Principal & Interest due on 06/01/2018;
- $1,284.32 Principal & Interest due on 07/01/2018;
- $1,284.32 Principal & Interest due on 08/01/2018;
- $1,284.32 Principal & Interest due on 09/01/2018;
- $1,284.32 Principal & Interest due on 10/01/2018;
- $1,284.32 Principal & Interest due on 11/01/2018;
- $1,284.32 Principal & Interest due on 12/01/2018;
- $1,284.32 Principal & Interest due on 01/01/2019;
- $1,284.32 Principal & Interest due on 02/01/2019;
- $1,284.32 Principal & Interest due on 03/01/2019;
- $1,284.32 Principal & Interest due on 04/01/2019;
- $1,284.32 Principal & Interest due on 05/01/2019;
- $1,284.32 Principal & Interest due on 06/01/2019;
- $1,284.32 Principal & Interest due on 07/01/2019;
- $1,284.32 Principal & Interest due on 08/01/2019;
- $1,284.32 Principal & Interest due on 09/01/2019;
- $1,284.32 Principal & Interest due on 10/01/2019;
- $1,284.32 Principal & Interest due on 11/01/2019;
- $1,284.32 Principal & Interest due on 12/01/2019;
- $1,284.32 Principal & Interest due on 01/01/2020;

- $1,284.32 Principal & Interest due on 02/01/2020;
- $1,284.32 Principal & Interest due on 03/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2012;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2013;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2014;



- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2014;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2015;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2016;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2017;

- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2017;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2018;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 04/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 05/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 06/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 07/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 08/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 09/01/2019;



- $395.52 Real Estate Taxes and/or Insurance Escrow due on 10/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 11/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 12/01/2019;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 01/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 02/01/2020;
- $395.52 Real Estate Taxes and/or Insurance Escrow due on 03/01/2020;
- $37.24 Late Charges on Payments Due due on 03/01/2012;
- $37.24 Late Charges on Payments Due due on 04/01/2012;
- $37.24 Late Charges on Payments Due due on 05/01/2012;
- $37.24 Late Charges on Payments Due due on 06/01/2012;
- $37.24 Late Charges on Payments Due due on 07/01/2012;
- $37.24 Late Charges on Payments Due due on 08/01/2012;
- $37.24 Late Charges on Payments Due due on 09/01/2012;
- $37.24 Late Charges on Payments Due due on 10/01/2012;
- $37.24 Late Charges on Payments Due due on 11/01/2012;
- $37.24 Late Charges on Payments Due due on 12/01/2012;
- $37.24 Late Charges on Payments Due due on 01/01/2013;
- $37.24 Late Charges on Payments Due due on 02/01/2013;
- $37.24 Late Charges on Payments Due due on 03/01/2013;
- $37.24 Late Charges on Payments Due due on 04/01/2013;
- $37.24 Late Charges on Payments Due due on 05/01/2013;
- $37.24 Late Charges on Payments Due due on 06/01/2013;
- $37.24 Late Charges on Payments Due due on 07/01/2013;
- $37.24 Late Charges on Payments Due due on 08/01/2013;
- $37.24 Late Charges on Payments Due due on 09/01/2013;
- $37.24 Late Charges on Payments Due due on 10/01/2013;
- $37.24 Late Charges on Payments Due due on 11/01/2013;
- $37.24 Late Charges on Payments Due due on 12/01/2013;
- $37.24 Late Charges on Payments Due due on 01/01/2014;
- $37.24 Late Charges on Payments Due due on 02/01/2014;
- $37.24 Late Charges on Payments Due due on 03/01/2014;

- $37.24 Late Charges on Payments Due due on 04/01/2014;
- $37.24 Late Charges on Payments Due due on 05/01/2014;
- $37.24 Late Charges on Payments Due due on 06/01/2014;
- $37.24 Late Charges on Payments Due due on 07/01/2014;
- $37.24 Late Charges on Payments Due due on 08/01/2014;
- $37.24 Late Charges on Payments Due due on 09/01/2014;
- $37.24 Late Charges on Payments Due due on 10/01/2014;
- $37.24 Late Charges on Payments Due due on 11/01/2014;
- $37.24 Late Charges on Payments Due due on 12/01/2014;
- $37.24 Late Charges on Payments Due due on 01/01/2015;
- $37.24 Late Charges on Payments Due due on 02/01/2015;
- $37.24 Late Charges on Payments Due due on 03/01/2015;
- $21.60 PP - BOARDING due on 01/13/2016;
- $1,798.92 PP - OTHER MAINTENANCE COSTS due on 01/13/2016;
- $330.00 PP - LEGAL - RECEIVER FEES due on 05/13/2016;
- $16.02 FCL CERTIFIED MAIL COST due on 05/13/2016;
- $3,680.00 PP-LAWN <5000 SQ FT RECUT due on 06/01/2016;
- $336.48 FCL POSTING OF SALE COST due on 08/09/2016;
- $44.64 FCL FEES due on 08/09/2016;
- $1,657.50 FCL ATTORNEY FEES due on 08/09/2016;
- $299.97 PP - ELECTRIC BILLS due on 08/29/2018;
- $1,249.40 FCL MISC PROCEEDINGS due on 12/11/2018;
- $460.00 PP-DEBRIS REMOVE I/E HUD ALLOW due on 05/23/2019;
- $125.00 PP-LOCK CHANGE/REKEY due on 06/01/2019;
- $300.00 PP - SNOW REMOVAL due on 06/11/2019;
- $140.00 PP-LAWN CARE INITIAL due on 06/19/2019;
- $240.00 PP - WINTERIZE-DEWINTERIZE due on 06/19/2019;
- $315.00 PP - OTHER REPAIRS due on 09/19/2019;
- $108.00 PP-INTERIOR INSPECTION due on 11/08/2019;
- $800.00 PP-LAWN CARE RECUT due on 11/09/2019;
- $557.94 PP - OTHER MAINTENANCE COSTS due on 11/22/2019;



- $680.00 PP-LOCK CHANGE/REKEY due on 12/24/2019;

- $775.00 PP-WINTERIZE DRY HEATING SYS due on 12/26/2019;

- $1,080.00 PP-INSPECTION EXTERIOR due on 01/03/2020;

- $50.00 PP-HEALTH HAZARD REMOVAL/MOLD due on 02/24/2020;

- $300.00 PP-PUMP-PUMP BASEMENT due on 02/24/2020;

- Uncollected Late Charges of $0.00

- Unapplied Balance of ($0.00)

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:

> Caliber Home Loans, Inc.
> PO Box 650856
> Dallas, TX 75265-0856

Please consider the following:

- You should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure.

- If you are a MassHousing borrower, you may also contact MassHousing (888-843-6432) to determine if you are eligible for additional assistance.  There may be other homeownership assistance available through your lender or servicer.

- You may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you.

- After 06/09/2020, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place. Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to Caliber Home Loans, Inc..

**If you do not pay the total past due amount of $161,021.63 and any additional payments that may become due by 06/09/2020, you may be evicted from your home after a foreclosure sale. If Caliber Home Loans, Inc. forecloses on this property, it means the mortgagee or new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact Caliber Home Loans, Inc. at (800) 621-1437 or 13801 Wireless Way Oklahoma City, OK 73134.

Sincerely,

**SPOC DEPARTMENT**
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134
(800) 621-1437
(800) 735-2989 (TDD).

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

## Additional Disclosures

**Contractual Disclosures:**

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. You have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law.

**Right to Reinstate Following Acceleration:**

You have the right to reinstate the loan after acceleration any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in the Security Instrument; (b) such other period as Applicable Law might specify for the termination of your right to reinstate; or (c) entry of a judgment enforcing the Security Instrument.

**Right to Redeem:**

You may redeem the property by paying the total amount due prior to the foreclosure sale.

**Bankruptcy Notice:**

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

**Mini-Miranda/FDCPA:**

**Caliber Home Loans, Inc. is a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

**NOTICE OF IMPORTANT RIGHTS:**

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.

**Telephone Number and Office Hours**:

Our telephone number is (800) 621-1437; our office hours are: Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00

am to 7:00 pm, Sat 8:00 am to 4:00 pm

**Credit Reporting:**

We may report information about your account to credit bureaus and late or missed payments may be reflected on your credit report. As required by law, you are hereby notified that a negative credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your obligations.

**Partial Payments:**

Caliber Home Loans, Inc. reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure.

**Servicemembers' Civil Relief Act:**

**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument now in default, please notify Caliber Home Loans, Inc. immediately. When contacting Caliber Home Loans, Inc. as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact SPOC DEPARTMENT toll-free at (800) 621-1437, or (800) 735-2989 (TDD) if you have questions about your rights under SCRA.

**Company Loss Mitigation Options:**

Caliber Home Loans, Inc. offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives to foreclosure. If you would like to learn more about these programs, you may contact our Loss Mitigation Department at (800) 621-1437, Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00 am to 7:00 pm, Sat 8:00 am to 4:00 pm.

- ***This is an important notice concerning your right to live in your home. Have it translated at once.***
- **Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.**
- **Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.**
- **C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.**
- 这是一则关于您居住权的重要通知, 请儘快安排翻译

## RIGHT TO REQUEST A MODIFIED MORTGAGE LOAN

03/11/2020

Sent Via Certified Mail
9307 1100 1170 1034 9518 74

**RICHARD J COFFIN**
**10 BELLEVIEW AVE**
**MARLBOROUGH, MA 01752-1213**

RE: 10 BELLEVIEW AVE, , MARLBOROUGH, MA 01752-1213; loan ███████ with Caliber Home Loans, Inc.

To RICHARD J COFFIN:

We are contacting you because our records indicate that you are eligible to request a modification of your mortgage with Caliber Home Loans, Inc.. If you want to request a loan modification or other foreclosure alternative option, you must complete and return the enclosed Mortgage Modification Options form along with any supporting information no later than 04/10/2020. The Mortgage Modification Options form and any supporting documents must be returned by certified mail or similar service to Caliber Home Loans, Inc.. We will respond to your request within 30 days of its receipt.

Please be aware this notice of the Right to Request a Modified Mortgage Loan is different from the Right to Cure Your Mortgage Default notice that you may have already received. *The enclosed Mortgage Modification Options form provides you with four choices. These choices impact the options under the Right to Cure notice and should be carefully considered.* If you do not want to request a loan modification, you must still return the enclosed Mortgage Modification Options form. Please keep a copy of everything you send to us and keep proof of mailing the materials to us.

**If you do not return the enclosed Mortgage Modification Options form and a completed loan modification application by 04/10/2020 your right to cure your mortgage default will end on 06/09/2020.**

If you have questions, please contact Caliber Home Loans, Inc. at (800) 621-1437 or 13801 Wireless Way Oklahoma City, OK 73134. If you would like assistance from the Attorney General's Office, you may contact the HomeCorps hotline at 617-573-5333 to speak with a loan modification specialist

who can assist you. We suggest you mention this notice when you call.

Sincerely,


SPOC DEPARTMENT
SPOC Specialist
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134
(800) 621-1437
(800) 735-2989 (TDD).


Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

Enclosures:
- Mortgage Modification Options form
- Request for Mortgage Assistance Form or Caliber Home Loans, Inc.'s current loan modification application
- Required Documents For Loan Modification Application

# MORTGAGE MODIFICATION OPTIONS

You must return this form in the enclosed envelope by 04/10/2020

**RICHARD J COFFIN**
**10 BELLEVIEW AVE**
**MARLBOROUGH, MA 01752-1213**

RE: 10 BELLEVIEW AVE , , MARLBOROUGH, MA 01752-1213; loan ███████with Caliber
Home Loans, Inc.

To RICHARD J COFFIN:

You must check one of the following boxes to notify Caliber Home Loans, Inc. of how you would
like to proceed.

❑     I would like to request a loan modification. I have attached a complete statement of my
      income and list of assets, total debts and obligations as requested by the creditor in the
      form(s) which accompanied the Right to Request a Modified Mortgage Loan Notice. I
      maintain my right to a 90 day period to cure my mortgage default.

❑     I would like to request a different foreclosure alternative such as a short sale or deed-in lieu
      of foreclosure. I maintain my right to a 90 day period to cure my mortgage default.

❑     I do not want to request a loan modification or any foreclosure alternative. I maintain my
      right to a 90 day period to cure my mortgage default.

❑     I want to waive my right to cure the default on my mortgage loan and proceed to
      foreclosure. I understand that by choosing this option I waive the remaining time, if any, of
      my right to cure period.


_____        _____
Borrower Name                                      Date

_____
Borrower Telephone Number

**LOSS MITIGATION APPLICATION**

**COMPLETE ALL PAGES OF THIS FORM**
**See instructions page for numbered boxes at the end of this application.**

Loan Number: _____Servicer: _Caliber Home Loans, Inc._

| BORROWER {1} | CO-BORROWER {2} |
|---|---|
| Borrower's Name | Co-Borrower's Name |
| Social Security No. ........................................Date of Birth | Social Security No. ........................................Date of Birth |
| Home phone number with area code | Home phone number with area code |
| Cell number with area code | Cell number with area code |
| Work number with area code | Work number with area code |
| Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. | Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. |

**{3}** Mailing address:

......Property address (if same as mailing address, check same)   ☐  Same

**{4} I want to:**       ☐ Keep the Property ....   ☐ Vacate the property ....
**The property is my:**   ☐ Primary Residence   ☐ Second Home ...... ☐ Investment ....
**The property is:**   ☐ Owner Occupied   ☐ Renter Occupied .......... ☐ Vacant ....
    **If the property is not currently vacant, do you have plans to vacate the property within 90 days?** ... ☐ Yes  ☐ No

| {5} | {6} |
|---|---|
| Is the property listed for sale? .☐ Yes ..☐.No......... | Have you contacted a housing-counseling agency for help?.☐ Yes ☐ No |
| If No, proceed to section {6} | If yes, please complete the following: |
|  | Counselor's Name: _____ |
| Have you received an offer on the property?...☐ Yes ...☐ No | Agency Name: _____ |
| Date of offer:_____ Amount of offer: $ _____ | Counselor's Phone Number: _____ |
| Agent's Name? _____ | Counselor's E-mail: _____ |
| Agent's Phone Number: _____ |  |
| For Sale by Owner?  ☐ Yes .. ☐ No |  |
| **{7}** Who pays the real estate tax bill on your property? ...☐ I do ..☐ Lender does ...☐ Paid by condo or HOA | **{8}** Who pays the hazard insurance premium for your property? ...☐ I do ...☐ Lender does .....☐ Paid by condo or HOA |
| Are the taxes current? ...  ☐ Yes   ☐ No | Is the policy current?   ☐ Yes   ☐ No |
| Condominium or HOA fees? ... ☐ Yes ... ☐ No | Name of Insurance Co.: _____ |
| If yes:  $_____ | Insurance Co. Tel #: _____ |
| Homeowners Association Name (HOA): |  |

| | |
|---|---|
| _____<br>Paid to: _____ | |

**{9} Bankruptcy**
Have you filed for bankruptcy? ☐ Yes   ☐ No      If yes: ☐ Chapter 7  ☐ Chapter 11  ☐ Chapter 12  ☐ Chapter 13
Filing Date: _____
Has your bankruptcy been discharged?  ☐ Yes   ☐ No      Bankruptcy case number: _____

**{10} Additional Liens/Mortgages or Judgments on this property:**

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**{11} HARDSHIP STATEMENT**
I am requesting review under your loss mitigation program.
I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

| | |
|---|---|
| ☐ My household income has been reduced.  For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower. | ☐ My monthly debt payments are excessive and I am overextended with my creditors.  Debt includes credit cards, home equity or other debt. |
| ☐ My expenses have increased.  For example:  monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |

Hardship Detail (Please give a short description of your hardship situation):

**COMPLETE ALL PAGES OF THIS FORM**
**See instructions page for numbered boxes at the end of this application.**

{12}
Are you self-employed? . . . . . . . . . . ☐ Yes  ☐ No  **(please check one)**
Are you a teacher? . . . . . . . . . . . . . . ☐ Yes  ☐ No  **(please check one)**
If yes, do your paychecks consist of a  ☐ 10 month salary  OR  ☐ 12 month salary?  **(please check one)**

{13}
A Formal Repayment Plan requires a down payment of 50% of your unpaid past due debt. Do you have funds* that Caliber can consider in evaluating you for a Formal Repayment Plan?   **Yes / No (please circle one)**

\* Funds include checking or savings accounts, cash, and other liquid assets. Funds do not include retirement accounts.

If "Yes", what are the total funds? $_____

| {14} Income[1] | | Assets | | Expenses | | |
|---|---|---|---|---|---|---|
| ☐ Monthly Income | $ | {25} Checking Account(s) | $ | {36} First Mortgage Payment | $ | |
| ☐ Bi-Weekly Income | $ | {26} Checking Account(s) | $ | {37} Second Mortgage Payment | $ | |
| ☐ Semi-Monthly Income | $ | {27} Savings/ Money Market | $ | {38} Rental Property Mortgage Payment | $ | |
| ☐ Weekly Income | $ | {28} CDs | $ | {39} Borrower Paid Homeowner's Insurance | $ | ( )Monthly ( )Quarterly ( )Annually |
| {15} Overtime/Bonus | $ | {29} Stocks/ Bonds | $ | {40} Borrower Paid Real Estate Taxes | $ | ( )Monthly ( )Quarterly ( )Annually |
| {16} Commission | $ | {30} Other Cash on Hand | $ | {41} HOA/Condo Fees | $ | ( )Monthly ( )Quarterly ( )Annually |
| {17} Social Security Income | $ | {31} Other Real Estate (estimated value) | $ | {42} Credit Cards / Installment Loan(s) (total minimum payment per month) | $ | |
| {18} Disability Income | $ | {32} Other: | $ | {43} Alimony, child support payments | $ | |
| {19} Rental Income | $ | {33} Other: | $ | {44} Net Rental Expenses | $ | |
| {20} Unemployment Income | $ | {34} Other: | $ | {45} Car Payments | $ | |
| {21} Child Support/Alimony/Separation Maintenance Income[2] | $ | {35} **Total Assets:** | $ | {46} Food / Groceries | $ | |
| {22} Non-Borrower Contribution to Household Income | $ | | | {47} Utilities (Water / Electricity / Gas / Trash) | $ | |
| {23} Public Assistance[3] | $ | | | {48} Automobile Gas/Insurance | $ | |
| {24} **Total (Gross Income)** | $ | | | {49} Other | $ | |
| | | | | {50} **Total Expenses** | $ | |

**ALL INCOME MUST BE DOCUMENTED**
[1]  Include combined monthly income and expenses from the borrower and co-borrower (if any).
[2]  You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.
[3]  You are not required to disclose Public Assistance income, unless you choose to have it considered by your servicer.

**Instructions for Completing the Loss Mitigation Application**
**The numbers for each item below correspond to the same numbers in the form above.**

{1} The borrower section must include information on the person whose name is on the ''Note'' for the mortgage loan.

{2} The co-borrower is a second person on the Note for the mortgage loan.  Do not fill out this section for someone who is not obligated on the Note for the mortgage loan.

{3} Please provide a mailing address and a residential "Property" address if different.  The Property address should correspond to the mortgage for which you are submitting a Loss Mitigation Application.

{4} For this section you should choose one option for each question.

{5} If your Property is not listed for sale, you do not need to fill out the rest of Section 5.  Only include offers for sale that you received in the past year.

{6} HUD-approved counselors are available free of charge and can be located on the HUD website at www.HUD.gov.

{7} If your real estate taxes are part of the monthly payment that you make to your servicer, select ''lender does.''  ''HOA'' means Homeowner's Association.

{8} If your hazard insurance premium is part of the monthly payment that you make to your servicer, select ''lender does.''  ''HOA'' means Homeowner's Association.

{9}  The filing date indicates when you officially filed for bankruptcy.  Only check the ''yes'' box for a discharged bankruptcy if you received a discharge from bankruptcy.

{10} Additional liens include second (or third) mortgages and home equity lines of credit.

{11} Please select as many hardships as apply to your situation and use the additional Hardship Detail section to explain your hardship.

{12} Check one answer for each question.

{13} Indicate amount of total funds to be evaluated for a Formal Repayment Plan.

{14} Indicate and check frequency. Include gross wages, which are what you receive before taxes.  Use your most current pay stub to find this amount.

{15} This amount should be listed on a current pay stub.

{16} This amount can be listed on a current pay stub or on a separate pay stub from wages.

{17} Only include if you are collecting SSI (Social Security Income).

{18} Only include if you are collecting Disability income.

{19} Only include rental income if used as part of your overall income.  Include current lease agreement or most recent tax return and most recent one month bank statement showing receipt of payment.

{20} Report any unemployment income.

{21} If you receive child support, alimony, or separation maintenance income, you are not required to report it.

{22} Include income contributed to the Household from Non-Borrowers.

{23} Report the amount indicated on your benefits letter, including Public Assistance (food stamps and welfare).  For Social Security, Disability, or Pension, a copy of your award letter must be provided or most recent one month bank statement showing receipt of payment. For Public Assistance, a copy of your award letter must be provided or most recent one month transaction activity.

{24} Add all amounts in income column (boxes 14-23) and report sum.

{25} – {27} Report amounts for all accounts, if applicable.

{28} ''CDs'' means certificates of deposit.

{29} – {30} Report amounts for all accounts, if applicable.

{31} Include estimated value for all other properties owned.

{32} – {34} Report any other assets other than the value of life insurance or retirement plans, such as 401K, pension funds, IRAs.

{35} Add all amounts in assets column (boxes 25-34) and report sum.

{36} This amount can be found on your statement for your first mortgage.

{37} If applicable, this amount can be found on the statement for your second mortgage or home equity lines of credit.

{38} If applicable, this amount can be found on the statement for your rental property.

{39} This refers only to homeowner's insurance and should be reported only if you pay this yourself.

{40} Only report these taxes if you pay them yourself.

{41} "HOA" means Homeowners Association.

{42} Add all credit cards and installment payments and report sum here.

{43} If you are responsible for paying child support or alimony, you must report the amount here.

{44} Report amount if your total rental income does not cover your total rental expenses.

{45} Include car payments only if you are the owner of the vehicle.

{46} Include all household food expenses.

{47} Include all expenses for utilities (water, gas, electricity, trash).

{48} Include all expenses for automobile gas and insurance.

{49} Include any other pertinent household expenses.

{50} Add all amounts in expense column (boxes 36-49) and report sum.

{51} Please be sure to read the entire Loss Mitigation Application Acknowledgement and Agreement before signing.

**LOSS MITIGATION APPLICATION**
**ACKNOWLEDGMENT AND AGREEMENT**

*In making this request for consideration under your loss mitigation program, I certify under penalty of perjury:*

That all of the information in this document is truthful and the event(s) identified on page one is/are the reason that I need to request a change to the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

I understand that the Servicer, Caliber Home Loans, Inc., or its agents may investigate the accuracy of my statements and may require me to provide supporting documentation.  I also understand that knowingly submitting false information may violate the law.

I understand that the Servicer will obtain a current credit report on all borrowers obligated on the Note.

I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any loss mitigation agreement and may pursue foreclosure on my home.

I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

I am willing to commit to housing counseling if it is determined that my financial hardship is related to excessive debt.

I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  I understand and consent to the disclosure of my personal information and the terms of any loss mitigation agreement to any third party that needs this information to process this application, including but not limited to: any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate liens (if applicable) mortgage loan(s); any companies that perform support services in conjunction with my mortgage;  any HUD-certified housing counselor; and government regulators.

By providing my phone number, I consent to being contacted via voice call, text message, or pre-recorded message by Caliber Home Loans, Inc. or its authorized third party through an automated dialing system regarding my account at any telephone number, including mobile telephone number, I have provided.

{51}
_____         _____
      Borrower Signature                                                    Date


_____         _____
      Co-Borrower Signature                                              Date



Account Number: _____



**REQUIRED DOCUMENTS FOR LOSS MITIGATION ASSISTANCE**

**The following documents are required for Caliber to review your application for loss mitigation:**[1]
- Completed and signed Loss Mitigation Application
- If you earn a salary or hourly wage: Most recent 30-days concurrent pay stubs.  These must display year-to-date payment information.
- If you are self-employed:
  - Signed three current months or year-to-date Profit and Loss Statement, OR
  - Most recent three months of bank statements and most recently filed state or federal tax return
- Documentation for additional sources of income:
  - Proof of other earned income: bonuses, commissions, tips, or overtime pay
  - If fixed income (Social Security, Disability, or Pension):
    - Award letter showing the amount and frequency of funds such as exhibits, disability policy or benefits statement from the provider, OR
    - Most recent one month bank statements showing receipt of payment
  - If Rental Income:
    - Current lease agreement, OR
    - Most recently filed federal tax return with all schedules and most recent one month bank statement showing receipt of payment
  - If Public Assistance:[2]
    - Award letter showing the amount and frequency of funds OR
    - Most recent one month transaction activity showing benefit deposits onto benefit card OR
    - A copy of front and back of benefit card
  - If Alimony or Child Support Income:[3]
    - Divorce decree or other written agreement filed with a court, OR
    - Alimony or child support order statement showing the amount and frequency of payments, and most recent one month bank statement showing receipt of payment
  - If submitting Contributor information:
    - Letter of Occupancy Verification
    - And Occupancy verification document; such as: utility bill, bank statement, voter registration or driver license

Based on circumstances, additional documentation may be required.  **DO NOT send original documents**.  Original documents cannot be returned.  You can download your application, upload documents online and create a checklist to track your progress by logging into your account at www.caliberhomeloans.com. Alternatively, you can return your completed application for review to the fax number, mailing address, or e-mail address below. Please indicate your loan number on each document of your application regardless if sent via web upload, fax, mail, or email.

**Loss Mitigation Application Return Address:**

Caliber Home Loans, Inc.
Attn: Loss Mitigation
13801 Wireless Way
Oklahoma City, OK 73134
www.caliberhomeloans.com
Fax number: 405-608-2011
Email: calibermods@caliberhomeloans.com

**ALL INCOME MUST BE DOCUMENTED**

[1] Include combined monthly income and expenses from the borrower and co-borrower (if any).

[2] You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.

[3] You are not required to disclose Public Assistance income, unless you choose to have it considered by your servicer.

D1



2015 00067018

Bk: 65330 Pg: 559    Doc: ASM
Page: 1 of 1    05/07/2015 11:51 AM

This space for Recorder's use

DocID#    17114734890450163

Property Address:
**10 Belleview AVENUE**
**Marlboro, MA 01752-1213**
Property Location:
**Township of MARLBORO**
MA0-AM  32433849  4/14/2015  FNN331A

Recording Requested By:
**Bank of America**
Prepared By:
**Lisa Campbell Moore**
**813-615-3557**
**4909 Savarese Circle**
**Tampa, FL 33634**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 DALLAS PARKWAY SUITE 1000, DALLAS, TX 75254** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:    **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L.P., ITS SUCCESSORS AND ASSIGNS**

Original Borrower(s):    **RICHARD J. COFFIN**
Date of Mortgage:    **11/21/2006**
Original Loan Amount:    **$245,000.00**
Certificate of Title Number:    **ABSTRACT LAND**

Recorded in **Middlesex/South District**, MA on: **11/27/2006**, book **48551**, page **45** and instrument number **2006 00223608**

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
**4/14/2015**

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP

By: _____
Audrey Lucas, Assistant Vice President

State of **FL**, County of **Hillsborough**

The foregoing instrument was acknowledged before me this **APR 1 4 2015** _____, by Audrey Lucas, Assistant Vice President of BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, on behalf of the corporation. He/she is personally known to me or has produced _____ as identification.

Notary Public: _**Martha Lucia Correa**_
My Commission Expires: _**1/26/19**_

Martha Lucia Correa
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF192644
Expires 1/26/2019

EXHIBIT
**H**

# Middlesex South Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

---

### Recording Information

Document Number : 13691
Document Type : ASM
Recorded Date : January 29, 2020
Recorded Time : 09:37:06 AM

Recorded Book and Page : 74054 / 51
Number of Pages(including cover sheet) : 3
Receipt Number : 2422072
Recording Fee : $105.00

**Middlesex South Registry of Deeds**
**Maria C. Curtatone, Register**
**208 Cambridge Street**
**Cambridge, MA 02141**
**617-679-6300**
**www.middlesexsouthregistry.com**


EXHIBIT
I

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**CHL Loan Number** ▮▮▮▮▮▮
**FNMA Loan Number** ▮▮▮▮▮▮

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY., BUILDING VII, PLANO, TX 75024, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSRMF MH MASTER PARTICIPATION TRUST II, WHOSE ADDRESS IS 300 DELAWARE AVENUE - 9TH FLOOR, WILMINGTON, DE 19801, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date **11/21/2006,** made and executed by **RICHARD J COFFIN,** mortgagor(s), to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR GATEWAY FUDNING DIVERSIFIED MORTGAGE SERVICES LP, ITS SUCCESSORS AND ASSIGNS,** mortgagee, and was recorded in the Office of the Register of Titles and County Recorder for **MIDDLESEX SOUTH** County, **Massachusetts,** in **Book 48551, Page 45 and Doc # 2006 00223608.**

Property is commonly known as: 10 BELLEVIEW AVENUE, MARLBORO, MA 01752.

**IN WITNESS WHEREOF,** this Assignment is executed by its VICE PRESIDENT **this 28th day of January in the year 2020.**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact (POA RECORDED: 12/15/2016 BK: 68596 PG: 137 INSTR#: 225614)**

_TFL_

**TIFFANY FLOYD**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

FNMA1 ▮▮▮▮▮ 2019-NPL2-PL3-SALE   DOCR T282001-08:44:23 [C-2]   EFRMMA1



*D0045959533*

**CHL Loan Number** ▮▮▮
**FNMA Loan Number** ▮▮▮

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 28th day of January in the year 2020, by Tiffany Floyd as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*[signature]*

**VICKY MCCOY**
**COMM EXPIRES: 12/18/2022**

> **VICKY MCCOY**
> **NOTARY PUBLIC**
> **STATE OF FLORIDA**
> **COMM# GG285301**
> **EXPIRES: 12/18/2022**

☐  No Mortgage Broker was involved in the placing of this loan.
Mortgage Broker's Name:
Address:
License:

☐  No Mortgage Loan Originator was involved in the placing of this loan.
Mortgage Loan Originator's Name:
Address:
License:

**Instrument Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
FNMA1 ▮▮▮ 2019-NPL2-PL3-SALE    DOCR T282001-08:44:23 [C-2]    EFRMMA1

*[barcode]*     *[barcode]*

*D0045959533*

## AFFIDAVIT UNDER M.G.L. c. 183 § 5B

I, Patrick D. Beaton, being associated with the law firm of Doonan, Graves & Longoria, LLC, attorneys of record for U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II, the Plaintiff, in an action against the property being foreclosed upon, 10 Belleview Ave, Marlborough, MA 01752 (the "Property"), Mortgage on said property being recorded in the Middlesex County (Southern District) Registry of Deeds at Book 48551, Page 45, as assigned of record, hereby state and swear, under oath, that said Property listed above is currently vacant and/or abandoned. This Affidavit is in accordance with the Commonwealth of Massachusetts emergency declaration due to the COVID-19 Pandemic and per State Legislation, House Bill 4647, Moratorium on Evictions and Foreclosures signed into Law on April 20, 2020 until the time proscribed in that legislation has ended, and satisfies the conditions of M.G.L. c. 183 § 5B, as described below.

I am aware of the provisions of House Bill 4647 and I have personal knowledge that the Property located at 10 Belleview Ave, Marlborough, MA 01752 is vacant and/or abandoned because:

- On August 12, 2020 I visited the Property in order to determine occupancy status;
- On August 12, 2020 I observed that the Property was vacant;
- On August 12, 2020 I prepared a Property Inspection Report with photographs of the exterior of the Property;
- I have conducted due diligence concerning the Occupancy Status of the above property including:
    - Reviewing our client's records
    - Performing a skip trace search on LexisNexis Accurint



- Contacting the city/town's assessor's office to inquire where tax bills are mailed

- Conducting a Pacer Search for bankruptcy records

- Based upon the foregoing information and my observations at this time of my August 12, 2020 inspection of the Property, it is vacant and secure.

Sworn to under the pains and penalties of perjury this 17th day of August, 2020

Patrick D. Beaton, Esq.
Doonan, Graves & Longoria, LLC
100 Cummings Center
Suite 225D
Beverly, MA 01915
(978) 921-2670

56463

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                     Dated this 17th day of August, 2020

COUNTY OF ESSEX

On this 17 day of August, 2020, before me the undersigned notary public personally appeared Patrick D. Beaton, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Witness my hand and official seal.

Notary Public
My Commission Expires:

Attorney Certification:

I, Patrick D. Beaton, hereby certify that I am a duly licensed attorney, in good standing, in the Commonwealth of Massachusetts, and that the facts in the foregoing Affidavit are relevant to the title of the premises therein described and will be of benefit and assistance in clarifying of title thereto.

Dated: __August 17__ 2020

_____
Patrick D. Beaton, Esq. (BBO #661215)



# 10 Belleview Avenue, Marlborough, MA 01752
# Inspection Report
# Patrick Beaton, Esquire
# Client: Caliber Home Loans, Inc.
# August 12, 2020

Ranch style house with aluminum siding, asphalt shingle roof in fair condition, gutters and downspouts, carport, no gas meter, electric meter present and electric is on, tree limb down in backyard.

Per the assessor's record card:  Single family home built in 1956 with 3 bedrooms and 1 bathroom.  The home has 1,176 interior square feet with a 8,106 square foot lot.  Taxes for 2020 are estimated at $4,159.00.

The property is VACANT, posted (winterized), and has a lockbox.  Recommendation is to check for code violations, get rid of tree limb in yard, and continue to keep clean and secure.

Pictures taken by Patrick Beaton, Esquire



















Pictures taken by Google Earth







Pictures taken by Zillow







## Person Investigations Results

Records: 1 to 25 of 72

**Search Terms Used -  Last Name: COFFIN; First Name: RICHARD; Middle Name: J; SSN: 016-42-xxxx;**

Result Page:  1 2 3 ▶

| | Full Name | SSN | Address | Phone | Next Steps |
|---|---|---|---|---|---|
| **1.** | RICHARD JOSEPH COFFIN<br>RICHARD J COFFIN<br>RICHARD COFFIN<br>JOSEPH COFFIN<br>J COFFIN RICHARD<br>DOB: 7/xx/1951<br>Age: 69<br>DOB: 1952<br>Age: 68<br>Gender - Male<br>*View Sources (~10) | 016-42-xxxx<br><br>LexID: 477375189 | 44 AHLGREN CIR<br>MARLBOROUGH MA 01752-1061<br>Jul 2003 - Aug 2020<br>✔ Probable current address | 508-485-0558 - EDT<br>Jul 20 - Aug 20<br>Current DA<br>COFFIN RICHARD J<br>(Current Listing Name)<br><br>508-485-5064 - EDT<br>Mar 15 - Oct 19<br>Current DA<br>RICHARD J COFFIN<br>(Current Listing Name)<br><br>508-361-8127 - EDT<br>Sep 18<br>Current DA<br>RICHARD COFFIN<br>(Current Listing Name) | **National Comprehensive Report**<br><br>**National Comprehensive Report Plus Associates**<br><br>**Other Reports**<br>**Address Report**<br>**Court Search**<br>**Contact Card Report**<br>Learn how Accurint Reports can assist you:**See Examples** |

| We Also Found: | ☐ Phones Plus | ☐ Motor Vehicles | ☐ Email Address |
|---|---|---|---|

| Address | Phone |
|---|---|
| 10 BELLEVIEW AVE<br>MARLBOROUGH MA 01752-1213<br>Jul 2003 - Mar 2018 | 508-485-5064 - EDT<br>Aug 03 - Mar 15<br>Possible non-DA<br>RICHARD J. COFFIN<br>(Current Listing Name)<br><br>508-393-8048 - EDT<br>Aug 03 - Nov 15<br>Possible non-DA<br>FITZGERALD SARA D<br>(Current Listing Name) |
| 14 PRINCESS RD<br>MARLBOROUGH MA 01752-1563<br>Apr 1987 - Dec 2006 | 508-481-1171 - EDT<br>Oct 00 - May 10<br>Possible non-DA<br>📍 phone number may be disconnected. |
| 59 SCHOOL ST<br>NORTHBORO MA 01532-2345<br>Apr 2001 - Aug 2003 | |
| 59 SCHOOL ST APT B-10<br>NORTHBOROUGH MA 01532-2351<br>May 1996 - Aug 2003 | |
| 59 SCHOOL ST UNIT 10<br>NORTHBOROUGH MA 01532-2345<br>May 1996 - Sep 2002 | |
| PO BOX 76<br>MARLBOROUGH MA 01752-0076<br>May 1987 - May 2001 | 508-481-1171 - EDT<br>Dec 06<br>Possible non-DA<br>RICHARD J COFFIN |

Redson Investigations

(Current Listing Name)

| | | |
|---|---|---|
| 14 PRINCESS RD<br>MARLBORO MA 01752-1563<br>Oct 2000 - Apr 2001 | 508-481-1171 - EDT<br>Oct 00 - May 10<br>**Possible non-DA**<br>📍 phone number may be disconnected. | |
| 49 SOUTH ST APT<br>NORTHBOROUGH MA 01532-2603<br>🏷 Skilled nursing care facility.<br>Jun 2000 - Apr 2001 | 508-351-6682 - EDT<br>Oct 00 - May 01<br>**Possible non-DA**<br>📍 phone number may be disconnected. | |
| 4 PRINCESS RD<br>MARLBOROUGH MA 01752-1563<br>May 1999 - Aug 2000 | 508-481-1171 - EDT<br>Dec 06<br>**Possible non-DA**<br>RICHARD J COFFIN<br>(Current Listing Name) | |
| 15 BENEFIT ST<br>WALTHAM MA 02453-8635<br>May 1987 | | |
| 39 PEMBROKE ST<br>MARLBOROUGH MA 01752-1318<br>Mar 1985 - Apr 1986 | | |

**The following are possible PEOPLE AT WORK results for the subject searched:**

| | | | |
|---|---|---|---|
| Company: RICHARD J<br>COFFIN TRUCKING | FEIN: | 10 BELLEVIEW AVE<br>MARLBOROUGH MA 01752 | 508-485-5064 |

**2.**    RICHARD J COFFIN

| | | |
|---|---|---|
| | 10 BELLEVIEW AVE<br>MARLBOROUGH MA 01752-1213<br>May 2006 - Mar 2015 | 508-485-5064 - EDT<br>Aug 03 - Mar 15<br>**Possible non-DA**<br>📍 phone number may be<br>disconnected. |

**Address Report**
Learn how Accurint Reports can assist you: **See Examples**

**3.**    RICHARD J COFFIN

| | | |
|---|---|---|
| | 10 BELLEVIEW AVE<br>MARLBORO MA 01752-1213<br>Aug 2003 - May 2006 | 508-485-5064 - EDT<br>Aug 03 - Mar 15<br>**Possible non-DA**<br>📍 phone number may be<br>disconnected. |

**Address Report**
Learn how Accurint Reports can assist you: **See Examples**

**4.**    RICHARD COFFIN

| | |
|---|---|
| REDMOND OR 97756<br>May 2013 - May 2015 | |

Learn how Accurint Reports can assist you: **See Examples**

**5.**    RICHARD COFFIN

| | |
|---|---|
| SAN FRANCISCO CA 94117<br>Jun 2011 - May 2015 | |

Learn how Accurint Reports can assist you: **See Examples**

**6.**    RICHARD COFFIN

| | |
|---|---|
| DULUTH GA 30096<br>Jan 2011 - Apr 2012 | |

Learn how Accurint Reports can assist you: **See Examples**

**7.**    RICHARD COFFIN

| | |
|---|---|
| JUPITER FL 33477<br>Nov 2013 - Jul 2015 | 561-972-7290 - EDT<br>**Possible non-DA**<br>📍 phone number may be<br>disconnected. |

Learn how Accurint Reports can assist you: **See Examples**

**8.**    RICHARD COFFIN

| | |
|---|---|
| JUPITER FL 33463<br>Dec 2012 - Nov 2013 | 561-972-7290 - EDT<br>**Possible non-DA**<br>📍 phone number may be<br>disconnected.<br>📍 phone number and zip<br>code combination is |

Learn how Accurint Reports can assist you: **See Examples**

Redson Investigations

invalid.

| | | | |
|---|---|---|---|
| 9. | RICHARD COFFIN | SANTA BARBARA CA 93103<br>Apr 2010 - Jul 2010 | **805-845-7799 - PDT**<br>Possible non-DA<br>🚩 phone number may be disconnected.<br>🚩 phone area code is changing. | Learn how Accurint Reports can assist you:See Examples |
| 10. | RICHARD COFFIN | SANTA BARBARA CA 93101<br>Mar 2010 - Apr 2010 | **805-845-7799 - PDT**<br>Possible non-DA<br>🚩 phone number may be disconnected.<br>🚩 phone area code is changing. | Learn how Accurint Reports can assist you:See Examples |
| 11. | RICHARD COFFIN | 124 SHEFFIELD DR<br>MONTECITO CA 93108-2228<br>Sep 2001 - Nov 2002 | **805-565-2927 - PDT**<br>Sep 01 - Nov 02<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 12. | RICHARD COFFIN | 141 AVE<br>SAN LEANDRO CA 94578<br>Jul 2007 - Oct 2007 | | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 13. | RICHARD COFFIN | 2070 CREEKSIDE RD<br>SANTA BARBARA CA 93108-2276<br>Nov 2002 - Oct 2010 | **805-565-2927 - PDT**<br>Nov 02 - Oct 10<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 14. | RICHARD COFFIN | 2070 CREEKSIDE RD<br>MONTECITO CA 93108-2276<br>Jun 2004 - Jun 2008 | **805-565-2927 - PDT**<br>Nov 02 - Oct 10<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 15. | RICHARD COFFIN | 20B MONTEREY GRDNS<br>NANUET NY 10954<br>Jun 2000 - Oct 2000 | | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 16. | RICHARD COFFIN | 223 JOSEPH ST<br>SCHUYLER NY 13340-5533<br>Feb 2006 - May 2006 | **315-894-2515 - EDT**<br>Feb 06 - May 06<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 17. | RICHARD COFFIN | 223 JOSEPH ST<br>FRANKFORT NY 13340-5533<br>Mar 2012 - Jun 2012 | **315-894-3549 - EDT**<br>Mar 12 - Jun 12<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |
| 18. | RICHARD COFFIN | 2827 SW VERSAILLES TER<br>STUART FL 34997-1372<br>Dec 2012 - May 2015 | **772-872-6701 - EDT**<br>Dec 12 - May 15<br>Possible non-DA<br>🚩 phone number may be disconnected. | Address Report<br>Learn how Accurint Reports can assist you:See Examples |

| 19. | RICHARD COFFIN | | | |
|---|---|---|---|---|
| | | 3139 E BALTIMORE ST<br>BALTIMORE MD 21224-1352<br>Mar 2006 - Aug 2006 | 410-814-4733 - EDT<br>Mar 06 - Aug 06<br>**Possible non-DA**<br>📢 phone number may be<br>disconnected. | **Address Report**<br>**Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 20. | RICHARD COFFIN | | | |
|---|---|---|---|---|
| | | 3258 WESTMINSTER DR<br>BOCA RATON FL 33496-2522<br>Jan 2001 - May 2015 | | **Address Report**<br>**Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 21. | RICHARD COFFIN | | | |
|---|---|---|---|---|
| | | 388 GROVE AVE<br>PATCHOGUE NY 11772-4140<br>May 2001 - Oct 2009 | 631-207-5748 - EDT<br>May 01 - Oct 09<br>**Possible non-DA**<br>📢 phone number may be<br>disconnected. | **Address Report**<br>**Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 22. | RICHARD COFFIN | | | |
|---|---|---|---|---|
| | | 7625 RANCHO VISTA BLVD<br>CORPUS CHRISTI TX 78414-3602<br>Mar 2015 - Jan 2018 | 361-452-2296 - CDT<br>Mar 15 - Jan 18<br>**Possible non-DA**<br>📢 phone number may be<br>disconnected. | **Address Report**<br>**Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 23. | RICHARD COFFIN | | | |
|---|---|---|---|---|
| | | 941 TOPVIEW DR<br>EDGEWOOD MD 21040-1907<br>Dec 2005 - Dec 2012 | | **Address Report**<br>**Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 24. | R COFFIN | | | |
|---|---|---|---|---|
| | | ATHOL ID 83801<br>Jun 2015 - May 2018 | | **Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

| 25. | R COFFIN | | | |
|---|---|---|---|---|
| | | WILLIAMSPORT PA 17701<br>Jul 2011 - May 2015 | | **Learn how Accurint Reports**<br>**can assist you:See**<br>**Examples** |

**Records: 1 to 25 of 72**

Result Page: **1** 2 3 ▶

**Your DPPA Permissible Use:** Use in the Normal Course of Business

**Your GLBA Permissible Use:** Legal Compliance

**Your DMF Permissible Use:** No Permissible Purpose

Copyright © 2020 LexisNexis Risk Solutions.   Terms & Conditions | Privacy & Security

**11-42278** Richard J. Coffin
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Henry J. Boroff
**Date filed:** 05/27/2011 **Date of last filing:** 09/15/2011
**Debtor discharged:** 09/09/2011
**Date terminated:** 09/15/2011

Mobile Query

## Query

Alias
    Associated Cases
    Attorney
    Case Summary
    Creditor
    Deadline/Schedule
    Docket Report ...
    Filers
    History/Documents
    Notice of Bankruptcy Case Filing
    Party
    Related Transactions
    Status

Trustee
    View Document
    Claims Register
    List of Creditors



TAX COLLECTOR'S OFFICE 1ST FLOOR
140 MAIN STREET
MARLBOROUGH, MA 01752-3898
000003        0000518

# CITY OF MARLBOROUGH
## FY 2020 ACTUAL
## REAL ESTATE TAX BILL

**ONLINE PAYMENTS CAN BE MADE AT**
**www.marlborough-ma.gov** - click on "Pay Bills Online"

SCH 5-DIGIT 01752
COFFIN RICHARD J
44 AHLGREN CIR
MARLBOROUGH, MA 01752-1061

| Phone: | Office of the Assessor: | (508) 460-3779 |
|---|---|---|
| | Office of the Collector: | (508) 460-3737 |

Office Hours:   Monday, 8:30AM - 7:00PM
                Tues. - Fri., 8:30AM - 5:00PM
July & August:  Monday-Friday, 8:30AM-5:00PM

## ABATEMENT APPLICATIONS
### DUE  BY 02/03/2020

| Tax Rate | Residential | OpenSpace | Comm. | Industrial |
|---|---|---|---|---|
| per $1000 | $ 14.18 | $ 14.18 | $ 25.22 | $ 25.22 |

Interest at a rate of 14% per annum will accrue on overdue payments until payment is made.

YOUR ACTUAL TAX FOR THE FISCAL YEAR BEGINNING JULY 1, 2019 AND ENDING JUNE 30, 2020 ON THE PARCEL OF REAL ESTATE DESCRIBED BELOW IS AS FOLLOWS:

| | |
|---|---|
| Land Value | $116,900 |
| Building Value | $176,400 |
| Exemption | $0 |
| Total Value | $293,300 |

| PARCEL NUMBER | **0043-0058** |
|---|---|
| BILL NUMBER | **2596** |

## PROPERTY DESCRIPTION

LOCATION:   10  BELLEVIEW AVE

| Area:   0.186 Acres | CLASS: 1010 |
|---|---|
| BOOK / PAGE: | 40017/155 |
| DEED DATE: | 07/18/2003 |
| CUSTOMER NUMBER: | 233375 |

| | Special Assessments |
|---|---|
| SEWER LIEN | $7.11 |
| WATER LIEN | $14.33 |
| SW LIENINT | $2.73 |
| WATER LIEN INT | $2.71 |
| Total Special Assessments | $26.88 |
| Real Estate Tax FY 2020 | $4,158.99 |
| Total Tax & Assessments | $4,185.87 |

**TAXPAYER COPY** (vertical text)

| **TAXPAYER COPY #1** | **TAXPAYER COPY #2** |
|---|---|
| **DUE & PAYABLE FEBRUARY 3, 2020** | **DUE & PAYABLE MAY 1, 2020** |
| **$1,048.80** | **$1,048.80** |

**PAYMENT COUPON #2** (vertical)
**REAL ESTATE TAX** (vertical)

| Collector of Taxes<br>Eileen Bristol | COFFIN RICHARD J<br>44 AHLGREN CIR<br>MARLBOROUGH, MA 01752 | **ISSUE DATE:   4/1/2020** |
|---|---|---|

Your Actual Real Estate Tax for the fiscal year beginning July 1, 2019 and ending June 30, 2020 on the Parcel of REAL ESTATE described below is as follows:

| **Parcel:   0043-0058** |
|---|
| **Bill Number:   2596** |

LOCATION:   10  BELLEVIEW AVE

| Area:   0.186 Acres | CLASS: 1010 | DEED DATE: | 07/18/2003 |
|---|---|---|---|
| BOOK / PAGE: | 40017/155 | CUSTOMER NUMBER: | 233375 |

| Fourth Quarter Tax due | $1,035.36 |
|---|---|
| Fourth Quarter Lien | $13.44 |
| Fourth Quarter Abatement | $0.00 |
| Fourth Quarter Payment | $0.00 |

**MAIL PAYMENTS TO:**

**City of Marlborough**
**P.O. Box 735**
**Reading, MA 01867-0405**

| **PAYMENT COUPON #2**<br>**DUE & PAYABLE**<br>**MAY 1, 2020** | ➡ | **$1,048.80** |
|---|---|---|

| CITY SCHOLARSHIP DONATION — AMOUNT | | |
|---|---|---|
| $1     $2     $5     **OTHER** _____ | ➡ | $ |

| TOTAL PAYMENT | ➡ | $ |
|---|---|---|

072920820206000025965000010488000501203

**PAYMENT COUPON #1** (vertical)
**REAL ESTATE TAX** (vertical)

| Collector of Taxes<br>Eileen Bristol | COFFIN RICHARD J<br>44 AHLGREN CIR<br>MARLBOROUGH, MA 01752 | **ISSUE DATE:   12/31/2019** |
|---|---|---|

Your Actual Real Estate Tax for the fiscal year beginning July 1, 2019 and ending June 30, 2020 on the Parcel of REAL ESTATE described below is as follows:

| **Parcel:   0043-0058** |
|---|
| **Bill Number:   2596** |

| Preliminary Tax | $2,088.27 |
|---|---|
| Payments Made | $2,088.27 |

LOCATION:   10  BELLEVIEW AVE

| Area:   0.186 Acres | CLASS: 1010 | DEED DATE: | 07/18/2003 |
|---|---|---|---|
| BOOK / PAGE: | 40017/155 | CUSTOMER NUMBER: | 233375 |

| Tax Balance | $0.00 |
|---|---|
| Interest on Balance | $0.00 |
| Third Quarter now due | $1,035.36 |
| Third Quarter Lien | $13.44 |
| Third Quarter Abatement | $0.00 |

**MAIL PAYMENTS TO:**

**City of Marlborough**
**P.O. Box 735**
**Reading, MA 01867-0405**

| **PAYMENT COUPON #1**<br>**DUE & PAYABLE**<br>**FEBRUARY 3, 2020** | ➡ | **$1,048.80** |
|---|---|---|

| CITY SCHOLARSHIP DONATION — AMOUNT | | |
|---|---|---|
| $1     $2     $5     **OTHER** _____ | | $ |

| TOTAL PAYMENT | | $ |
|---|---|---|

072920820206000025965000010488000203206





[50 USC Appx. §3901 et seq. as amended]          The services provided on this site are FREE

Welcome to the Official
**Servicemembers Civil
Relief Act (SCRA) Website**

| Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account |

## Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

\*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

| | | |
|---|---|---|
| \*SSN | ████8020 | |
| \*Repeat SSN | ████8020 | |
| \*Birth Date | | |
| | MM/DD/YYYY(e.g. 09/16/2012) | |
| \*Last Name | COFFIN | |
| First Name | RICHARD | |
| Middle Name | J | |
| Active Duty Status Date | 06/11/2020 | |
| | MM/DD/YYYY (The default will be set to today's date) | |

Clear   Submit

### Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

### Resources

- Download Adobe Reader
- Unexpected Results?

Privacy Notice   No Fear Act Notice   USA.Gov                                        SCRA 4.0



EXHIBIT
**K**

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

**1QFJY956Y7DS4LP**                                                        56463-8020-Alias

Department of Defense Manpower Data Center

Results as of : Jun-11-2020 11:30:23 AM

SCRA 5.4



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-8020

Birth Date:

Last Name:     COFFIN

First Name:    RICHARD

Middle Name:   J

Status As Of:  Jun-11-2020

Certificate ID: 1QFJY956Y7DS4LP

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.



## Single Record Request

Use this page to request a Certificate verifying Active Duty Status for an individual on a specified date.

*Indicates a required field. Please note for a single record request, an SSN OR Birthdate is required. You may also enter BOTH an SSN and Birthdate.

| | | |
|---|---|---|
| *SSN | ███████8020 | |
| *Repeat SSN | ███████8020 | |
| *Birth Date | | 📅 |
| | MM/DD/YYYY(e.g. 09/16/2012) | |
| *Last Name | COFFIN | |
| First Name | RICHARD | |
| Middle Name | | |
| Active Duty Status Date | 06/11/2020 | 📅 |
| | MM/DD/YYYY (The default will be set to today's date) | |

Clear   Submit

### Tips & Notes

- Without a Social Security Number, DMDC cannot authoritatively assert that this is the same individual that your query refers to. Name and date of birth alone do not uniquely identify an individual.
- Check your data entry before submitting it.
- Response may take up to 15 seconds after clicking "Submit".

### Resources

- Download Adobe Reader
- Unexpected Results?

[50 USC Appx. §3901 et seq, as amended]    The services provided on this site are FREE

Welcome to the Official
**Servicemembers Civil Relief Act (SCRA) Website**

Home | Single Record Request | Multiple Record Requests | User's Guide | FAQs | News | Contact Us | My Account

Privacy Notice   No Fear Act Notice   USA.Gov                    SCRA 4.0

*This document was created solely by Quandis, Inc. using information submitted to SCRA. The information contained herein is for the exclusive and authorized use of the intended recipient.*

JCGFQ1R5K71PV37                                                          56463-8020-Alias

Department of Defense Manpower Data Center

Results as of : Jun-11-2020 11:30:23 AM

SCRA 5.4



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX-8020

Birth Date:

Last Name:       COFFIN

First Name:      RICHARD

Middle Name:

Status As Of:    Jun-11-2020

Certificate ID:  JCGFQ1R5K71PV37

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

56463-8020-Alias-P

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940).  DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate.  In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33.  If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you.  See 50 USC App. ? 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.